BLUE WATER ISLES COMPANY v DEPARTMENT OF NATURAL
RESOURCES

Docket Nos. 90886, 90887. Submitted April 23, 1987, at Lansing.
Decided July 12, 1988. Leave to appeal applied for.

Blue Water Isles Company brought an action in the Ingham
Circuit Court against the Department of Natural Resources and
the Natural Resources Commission, seeking damages and in-
junctive relief for the inverse condemnation of its marsh lands
in the St. John's marsh region after defendants denied an
adjacent landowner's application for a permit to allow dredging
and filling. Although plaintiff had not filed a similar applica-
tion relating to its property, it had planned to dredge and fill
its property as part of a plan to construct residential and
commercial buildings. The circuit court ruled that plaintiff's
action was not ripe since plaintiff had not yet sought a permit
and that the Court of Claims had exclusive jurisdiction over
plaintiff's claim for damages. Plaintiff applied for a permit,
which the defendants denied on the basis that the proposed
project would have a substantial adverse impact on the fish and
wildlife remaining in the marsh and would destroy a significant
part of the marsh. Following the denial of its permit applica-
tion, plaintiff's circuit court action for injunctive relief was
consolidated with its Court of Claims action seeking money
damages for inverse condemnation and a third circuit court
action brought by two environmental groups charging that
plaintiff's proposed use of the land violated Michigan environ-
mental laws. At the close of plaintiff's proofs, the court, Caro-
lyn Stell, J., granted a motion brought by the Department of
Natural Resources and the Natural Resources Commission
(hereafter collectively referred to as the DNR) for the involun-
tary dismissal of plaintiff's action. Plaintiff appealed.

The Court of Appeals held:

REFERENCES

Am Jur 2d, Administrative Law §§ 201 et seq.

Am Jur 2d, Eminent Domain §§ 157 et seq., 478 et seq.

Local use zoning of wetlands or flood plain as taking without
compensation. 19 ALR4th 756.

Conservation: validity, construction, and application of enactments
restricting land development by dredging or filling. 46 ALR3d
1422.

1. Appellate review of plaintiff's claim, that the provisions of the Inland Lakes and Streams Act regarding permits do not apply to its property, is precluded since plaintiff did not raise the issue at the proceedings below. Additionally, the DNR considered the criteria set forth in the Wetland Protection Act in reviewing plaintiff's request for a permit. The Wetland Protection Act specifically covers marsh land and requires permits for the dredging, filling and development of marsh land.

2. The trial court's finding that, contrary to plaintiff's claim, the DNR did not make a policy of denying all permits in the St. John's marsh region was supported by competent, material and substantial evidence.

3. Plaintiff was not denied its right to an unbiased and impartial decisionmaker at the DNR. The fact that the DNR was responsible for decisions on permanent requests for development of the St. John's marsh region at the same time that the DNR was seeking to acquire land within the region did not render the DNR incapable of making an unbiased decision since separate divisions were responsible for each of these functions. The record in this case clearly supports the trial court's finding that the DNR official who acted on plaintiff's permit application was not biased.

4. Any error committed by the DNR official who acted on plaintiff's application in considering the Wetland Protection Act and the Michigan Environmental Protection Act in addition to the Inland Lakes and Streams Act was harmless. Denial of plaintiff's application was supported by the standards set forth in the Inland Lakes and Streams Act.

5. The DNR's denial of plaintiff's permit application did not amount to an act of inverse condemnation requiring the payment of just compensation. The statutes under which the DNR reviewed and denied the application are reasonably related to the preservation of the state's natural resources and the protection of the public trust in inland lakes and streams. Moreover, the trial court's finding that no substantial depreciation in the value of plaintiff's property had resulted from the denial of the permit was not clearly erroneous.

Affirmed.

1. ENVIRONMENT — MARSH LANDS — DREDGING AND FILLING — DEPARTMENT OF NATURAL RESOURCES — INLAND LAKES AND STREAMS ACT — ADMINISTRATIVE PROCEDURES ACT.

Judicial review of a decision by the Department of Natural Resources, based on the Inland Lakes and Streams Act, to deny approval of a permit for the dredging, filling and commercial

development of marsh land is subject to the standards set forth in the Administrative Procedures Act (MCL 24.306, 281.957; MSA 3.560[206], 11.475[7]).

2. ADMINISTRATIVE LAW — HEARINGS — ADMINISTRATIVE PROCEDURES ACT.

The Administrative Procedures Act requires that administrative hearings be conducted in an impartial manner before an unbiased officer (MCL 24.279; MSA 3.560[179]).

3. EMINENT DOMAIN — INVERSE CONDEMNATION.

Under Michigan law, a taking of private property for public use is not restricted to cases involving absolute conversion of private property, but also includes cases where the value of the property is destroyed by the action of the government or where the owner is excluded from use or enjoyment of his property or from any of the appurtenances thereto.

4. EMINENT DOMAIN — INVERSE CONDEMNATION — TAKING OF PROPERTY.

Relevant factors to be examined in a determination of whether the impact of governmental action on a specific property constitutes a taking requiring just compensation include the economic impact of the regulation, its interference with reasonable investment-backed expectations, and the character of the government action; a land use regulation may be justified where the government's action is reasonably necessary to the effectuation of a substantial public purpose.

*Miller, Canfield, Paddock & Stone* (by *John D. Pirich* and *Kirk D. Messmer*), for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Thomas J. Emery,* Assistant Attorney General, for defendant.

Amici Curiae:

Michigan United Conservation Clubs, Inc. and Lake St. Clair Advisory Committee (by *Peter W. Steketee*).

Before: MAHER, P.J., and DOCTOROFF and H. T. CONLIN,* JJ.

PER CURIAM. Plaintiff, Blue Water Isles Company, appeals as of right from a judgment granting the motion of defendants, Department of Natural Resources and Natural Resources Commission, for involuntary dismissal pursuant to MCR 2.504(B)(2).

These consolidated cases involve the DNR's denial of plaintiff's application for a permit under the Inland Lakes and Streams Act (ILSA), MCL 281.951 *et seq.*; MSA 11.475(1) *et seq.*, to dredge and fill 442 acres of marsh lands, located in the St. John's marsh region at the delta of the St. Clair River. Plaintiff planned to construct 880 single-family residences, 20 acres of multiple high-rise buildings, 60 acres of multiple condominium buildings, and 20.3 acres of commercial office buildings.

After a neighboring landowner applied for and was denied a permit by the DNR to fill a portion of his land and construct residential apartments, plaintiff filed an action in the Ingham Circuit Court seeking damages and equitable relief for the "inverse condemnation" of its land. The circuit court ruled that plaintiff's suit was not ripe as it had not yet sought a permit from the DNR and that the Court of Claims had exclusive jurisdiction over plaintiff's damage suit. Plaintiff thereafter requested a permit to dredge and fill its 442 acres of marsh land. The DNR denied plaintiff's permit application on the basis that the proposed project would have a substantial adverse impact on the fish and wildlife remaining in the marsh and would destroy a significant part of the marsh.

Following the denial of its permit application, plaintiff's circuit court action for injunctive relief

* Circuit judge, sitting on the Court of Appeals by assignment.

was consolidated with its Court of Claims action seeking money damages for the inverse condemnation of its land and a third circuit court action brought by two environmental groups charging that plaintiff's proposed use of the land violated Michigan environmental laws.[1]

At the close of plaintiff's proofs, pursuant to MCR 2.504(B)(2), the DNR moved for involuntary dismissal of plaintiff's actions for injunctive relief and for money damages on the alleged claim of inverse condemnation. The circuit court issued a lengthy opinion containing its findings of fact and conclusions of law.

The circuit court ruled that plaintiff had not shown actual or probable bias in the DNR's denial of plaintiff's request for a permit. The court further ruled that plaintiff had failed to prove a past DNR policy to deny all permit applications in the St. John's marsh region such that plaintiff was denied an individualized hearing on its application and due process of law. On plaintiff's claim of inverse condemnation, the circuit court found that the DNR's denial of a permit had not caused a substantial reduction in value of plaintiff's property and, further, that there were various alternative uses for the marsh land which would be of substantial value to plaintiff yet would not destroy the marsh. Judgment was entered dismissing plaintiff's actions against defendants.

On appeal plaintiff sets forth a number of reasons in support of its contention that the trial court committed error requiring reversal in ruling that the DNR's denial of plaintiff's application for a permit to dredge and fill the marsh land was not unlawful.

The standard of review of a state administrative

---

[1] The latter action is not part of this appeal.

agency's decision is set forth in MCL 24.306; MSA 3.560(206):

> (1) Except when a statute or the constitution provides for a different scope of review, the court shall hold unlawful and set aside a decision or order of an agency if substantial rights of the petitioner have been prejudiced because the decision or order is any of the following:
>
> (a) In violation of the constitution or a statute.
>
> (b) In excess of the statutory authority or jurisdiction of the agency.
>
> (c) Made upon unlawful procedure resulting in material prejudice to a party.
>
> (d) Not supported by competent, material and substantial evidence on the whole record.
>
> (e) Arbitrary, capricious or clearly an abuse or unwarranted exercise of discretion.
>
> (f) Affected by other substantial and material error of law.
>
> (2) The court, as appropriate, may affirm, reverse or modify the decision or order or remand the case for further proceedings.

In reviewing the DNR's denial of a permit to plaintiff under MCL 24.306; MSA 3.560(206), the trial court found no basis to set aside the agency's decision. This Court reviews a decision of an administrative agency in the same limited manner as does the circuit court. *Auto Club Ins Ass'n v Comm'r of Ins,* 144 Mich App 525, 531; 376 NW2d 150 (1985).

Plaintiff first argues that the ILSA applies only to navigable water and, since the trial court made no findings that the marsh land was navigable, the court erred in applying the statute. Plaintiff, however, did not object at trial to ILSA's sovereignty over its marsh land. Nor did plaintiff raise the issue of ILSA's inapplicability in its complaint in the circuit court or in the Court of Claims. Plain-

tiff's failure to raise this issue below precludes consideration by this Court. *Bajis v Dearborn,* 151 Mich App 533, 536; 391 NW2d 401 (1986), lv den 426 Mich 874 (1986). We additionally note that the DNR considered the criteria set forth in the Wetland Protection Act, MCL 281.701 *et seq.*; MSA 18.595(51) *et seq.,* in acting on plaintiff's request for a permit. The latter act specifically covers marsh land and requires the obtaining of a permit to dredge, fill, and develop land covered under the act. MCL 281.702(g), 281.705; MSA 18.595(52)(g), 18.595(55).

Plaintiff next argues that the DNR unlawfully made a predetermination in 1974 that all permits in the St. John's marsh region would be denied regardless of their merit. Plaintiff claims that, since it was not included in this predetermination and did not receive notice of the decision, it was denied due process of law. The trial court found that plaintiff's proofs evidenced the DNR's concern for the region as an endangered natural resource. However, the DNR made no formal decision to deny all future permits in the area. We have reviewed the record and believe that the trial court's finding is supported by competent, material and substantial evidence.

Plaintiff also claims that it was denied its right to an unbiased and impartial decisionmaker. *Crampton v Dep't of State,* 395 Mich 347, 350-351; 235 NW2d 352 (1975), reh den 396 Mich 956 (1976). The Administrative Procedures Act requires that administrative hearings be conducted in an impartial manner before an unbiased officer. MCL 24.279; MSA 3.560(179).

Plaintiff argues that because the DNR was responsible for decisions on permanent requests for development of the St. John's marsh region at the same time that the DNR was seeking to acquire for

the state land within the region, the DNR had a conflict of interest in plaintiff's case which rendered it incapable of making an unbiased decision.

The trial court dismissed plaintiff's objection, noting that administrative agencies often perform quasi-judicial and quasi-legislative functions. *Livonia v DSS,* 423 Mich 466; 378 NW2d 402 (1985). We again find no error in the trial court's decision. Those seeking to acquire St. John's marsh region property had no control over the grant of permits in the same region. David Haywood, Assistant Chief of the Submerged Lands Division in the DNR, and the individual responsible for denying plaintiff's permit application, testified that his division acted only on ILSA permits and did not buy and sell land. Where, as here, these two separate functions were performed by separate divisions within one department, plaintiff was not denied its right to an unbiased decisionmaker.

Plaintiff similarly contends that David Haywood's actual and probable bias rendered him a partial and biased judge of the merits of plaintiff's application. As evidence of bias, plaintiff points to Haywood's awareness of the DNR's alleged policy to deny permits in the St. John's marsh region and of the DNR's desire to acquire land within the region.

Once again, the record clearly supports the trial court's finding that plaintiff failed to demonstrate actual or probable bias. Haywood testified that his denial of plaintiff's application was done in conjunction with the standards set forth in § 7 of the ILSA, MCL 281.957; MSA 11.475(7). Haywood denied that he was directed by his superiors to deny plaintiff's application or that his knowledge that the DNR wished to acquire St. John's marsh land affected his decision. The trial court's finding of no actual bias was based upon its assessment of Haywood's credibility; special regard should be given

to the factfinder's superior ability to judge the credibility of witnesses. *Kroll v Crest Plastics, Inc,* 142 Mich App 284, 290; 369 NW2d 487 (1985), lv den 423 Mich 859 (1985).

As evidence of Haywood's probable bias, plaintiff suggests that Haywood had a pecuniary interest in the outcome of the permit decision arising from the DNR's interest in acquiring plaintiff's land at a lower price. A due process violation may occur where the decisionmaker has a pecuniary interest in the outcome of the decision. *Crampton, supra,* p 351. The record amply supports the trial court's ruling that Haywood had no direct, pecuniary interest in either plaintiff's tract or in the DNR's acquisition of the land. Furthermore, because we have already found that the DNR's desire to acquire land in the St. John's marsh land did not create an impermissible conflict of interest, we reject plaintiff's argument that a pecuniary interest on the part of the DNR can be imputed to Haywood.

Plaintiff finally claims that the trial court's decision failed to comply with MCL 24.306; MSA 3.560(206) by using improper standards under the Wetland Protection Act and the Michigan Environmental Protection Act, MCL 691.1201 *et seq.*; MSA 14.528(201) *et seq.* Plaintiff's argument concerning the inappropriate simultaneous use of the ILSA and the Wetland Protection Act is not persuasive. The provisions of § 6 of the Wetland Protection Act do not mean that the two acts cannot apply simultaneously, but that a second permit requirement would be superfluous where one was required under the ILSA. Nor was consideration by the trial court of the Michigan Environmental Protection Act inappropriate. Furthermore, as denial of plaintiff's permit was supported under the ILSA's standards alone, MCL 281.957; MSA

11.475(7), any alleged error by Haywood in additionally considering the standards set forth in these other named statutes would be harmless.

We now turn our attention to the issue of whether the DNR's denial of plaintiff's application for a permit to dredge and fill its marsh land amounts to an act of inverse condemnation requiring that just compensation be paid to plaintiff. In its opinion granting defendants' motion for involuntary dismissal, the trial court found that no substantial reduction in value of plaintiff's marsh land had occurred as a result of defendants' permit denial and, additionally, that alternative uses of the marsh land existed which would be of substantial value to the plaintiff and yet not destroy the marsh. We review the trial court's findings of fact under the clearly erroneous rule set forth in MCR 2.613(C). *Marderosian v The Stroh Brewing Co,* 123 Mich App 719, 724; 333 NW2d 341 (1983). A finding of fact is clearly erroneous when the reviewing court, after reviewing the entire record, is left with a definite and firm conviction that a mistake has been committed. *Precopio v Detroit,* 415 Mich 457, 462; 330 NW2d 802 (1982).

The trial court correctly recognized that under Michigan law a "taking" of private property for public use is not restricted to cases involving absolute conversion of private property, but also includes cases where the value of the property is destroyed by the action of the government or where the owner is excluded from use or enjoyment of his property or from any of the appurtenances thereto. *Bott v Natural Resources Comm,* 415 Mich 45, 81, n 43; 327 NW2d 838 (1982), citing *Pearsall v Eaton Co Supervisors,* 74 Mich 558, 561; 42 NW 77 (1889).

The issue of what constitutes a taking of prop-

erty requiring just compensation has been the subject of recent United States Supreme Court decisions. Whether the impact of government action on a specific piece of property requires the payment of just compensation is essentially an ad hoc factual inquiry. *Keystone Bituminous Coal Ass'n v DeBenedictis,* 480 US —; 107 S Ct 1232; 94 L Ed 2d 472, 494 (1987), citing *Kaiser Aetna v United States,* 444 US 164, 175; 100 S Ct 383; 62 L Ed 2d 332 (1979). Relevant factors to be examined include the economic impact of the regulation, its interference with reasonable investment-backed expectations, and the character of the government action. *Id.* A land use regulation may be justified where the government's action is reasonably necessary to the effectuation of a substantial public purpose. *Penn Central Transportation Co v City of New York,* 438 US 104, 127; 98 S Ct 2646; 57 L Ed 2d 631 (1978), reh den 439 US 883; 99 S Ct 226; 58 L Ed 2d 198 (1978).

Here, both the statutes under which the DNR reviewed plaintiff's application and the DNR's denial of plaintiff's request are reasonably related to the preservation of the state's natural resources and the protection of the public trust in inland lakes and streams.

Moreover, the trial court's finding that no substantial depreciation in the value of plaintiff's property had occurred as a result of the permit denial is not clearly erroneous. Plaintiff purchased the land in 1971 for approximately $800,000. It subsequently sold two parcels to a third party for $466,000. The remaining land was valued in 1978 by a state appraiser at $376,500. In 1979, the DNR offered plaintiff $426,000 for the parcel. Where plaintiff itself valued the property on its 1980 tax return as $600,000, the trial court did not err in finding no substantial depreciation in value of the

property. Additionally, the trial court properly considered the existence of various alternative uses for the property which would not destroy the marsh land. *Penn Central, supra,* p 137.

From our examination of the record, we find no error in the trial court's conclusion that the DNR's denial of a permit to plaintiff to dredge and fill its marsh land did not amount to an act of inverse condemnation.

Affirmed.