BOND v DEPARTMENT OF NATURAL RESOURCES

Docket No. 114254. Submitted October 3, 1989, at Marquette. Decided December 20, 1989.

Edwin A. Bond purchased two contiguous parcels of land in Chippewa County. On one, he built a house for himself. On the other, which includes shoreline along the St. Mary's River, he intended to build a residential development which would include a system of canals. Bond allegedly met with state officials to discuss his proposed project prior to purchasing the property and was satisfied that he could develop the property. Bond began constructing a drainage ditch, but the Department of Natural Resources stopped the work, telling Bond he needed a permit. His application for a permit was denied on the ground that the St. Mary's River shoreline area was designated an environmental area under the Shorelands Protection and Management Act and the majority of the remainder of Bond's parcel was considered to be wetland under the Wetland Protection Act. Following some administrative procedures, Bond filed suit in Chippewa Circuit Court alleging that the designation of his property as wetland and an environmental area constituted a taking by inverse condemnation which deprived Bond of an economically viable use of his land and for which he was entitled to compensation and that such designation constituted a de facto taking within the meaning of the Uniform Condemnation Procedures Act. The court, Nicholas J. Lambros, J., sitting both as the Chippewa Circuit Court and the Court of Claims, denied plaintiff's request for a jury trial, but concluded that the ᴅɴʀ's action in this case was tantamount to an

Rᴇꜰᴇʀᴇɴᴄᴇꜱ

Am Jur 2d, Eminent Domain §§ 157-160, 478.

Supreme Court's views as to what constitutes "taking," within meaning of Fifth Amendment's prohibition against taking of private property for public use without just compensation. 89 L Ed 2d 977.

When is taking of property for "public use" so as to be permissible under Federal Constitution if just compensation is provided—Supreme Court cases. 81 L Ed 2d 931.

Local use zoning of wetlands or flood plain as taking without compensation. 19 ALR4th 756.

arbitrary and capricious taking of plaintiff's land without compensation. Plaintiff was awarded as damages $50,000, the difference in the price he paid for the property and the current market value. Plaintiff appealed, challenging both the amount of damages awarded and the court's denial of his request for a jury trial. The DNR cross appealed, arguing that the court erred in finding a taking.

The Court of Appeals *held:*

1. The trial court's finding that a taking occurred is clearly erroneous. Despite the pertinent designations at issue and the denial of the permit to dredge the drainage ditch, plaintiff is free to submit further applications for developments which might be approved. Thus, plaintiff is not deprived of an economically viable use of his land. The mere fact that a regulation deprives the owner of the most profitable use of his property does not necessarily establish the owner's right to just compensation.

2. The Uniform Condemnation Procedures Act has no application to inverse condemnation actions initiated by aggrieved property owners.

Reversed.

1. ENVIRONMENT — LAND-USE REGULATIONS — TAKING OF PRIVATE PROPERTY.

The factors used to determine whether application of a land-use regulation to a particular piece of property is a taking include the economic impact of the regulation on the property owner, particularly the extent to which the regulation interferes with distinct investment-backed expectations, and the character of the governmental action; the test, in pertinent part, looks to whether the regulation deprives the owner of an economically viable use of his land, and with regard to the economic impact inquiry, two points are emphasized: (1) the mere fact that a regulation deprives the owner of the most profitable use of his property does not necessarily establish the owner's right to just compensation, and (2) although a comparison of values of the property before and after is relevant, it is not conclusive.

2. EMINENT DOMAIN — UNIFORM CONDEMNATION PROCEDURES ACT.

The Uniform Condemnation Procedures Act governs actions initiated by an agency to acquire property through condemnation; the act has no application to inverse condemnation actions initiated by aggrieved property owners (MCL 213.51 *et seq.*; MSA 8.265[1] *et seq.*).

*Peacock, Fordney, Cady, Ingleson & Prine, P.C.*

(by *Harry Ingleson, II* and *Donald A. Ducastel*), for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Thomas J. Emery,* Assistant Attorney General, for defendant.

Amicus Curiae:

*Butzel, Long, Gust, Klein & Van Zile, P.C.* (by *Bert Burgoyne, David W. Berry,* and *Susan Friedlaender*), for Builders Association of Southeastern Michigan.

Before: GILLIS, P.J., and SULLIVAN and CAVANAGH, JJ.

PER CURIAM. Plaintiff Edwin A. Bond appeals as of right the judgment entered in his favor and against defendant Michigan Department of Natural Resources, challenging both the amount of damages awarded to him and the court's denying him a jury trial. Defendant DNR cross appeals that same judgment, arguing, in essence, that the court erred by finding a taking. We reverse the trial court's decision that a taking occurred.

The events giving rise to plaintiff's action for just compensation for a taking of his land began in 1977 when plaintiff purchased two contiguous parcels of land in Chippewa County. Plaintiff built a house for himself on one parcel. The other parcel which is involved in this case consists of 169.65 acres, including shoreline along the St. Mary's River. Plaintiff intended to build a residential development on the property which would include a system of canals. Plaintiff claimed that prior to purchasing the property at issue he met with state officials to discuss his proposed project, after which

he was satisfied that he could develop the property.

In 1981, plaintiff sought and obtained a drain permit from the county drain commissioner to construct a drainage ditch which presumably was the first phase of the project. Thereafter, in July, 1982, the DNR stopped plaintiff's work and told him that he needed a permit. Consequently, plaintiff stopped work on the ditch and applied for a permit. The permit application involved only twenty acres of his property, apparently including the shoreline property. Then, by letter dated November 19, 1982, plaintiff was notified that most of his 3,400 feet of shoreline property was designated an environmental area under the Shorelands Protection and Management Act, MCL 281.631 et seq.; MSA 13.1831 et seq. Moreover, the majority of the approximately 170-acre parcel is considered to be wetland under the Wetland Protection Act, MCL 281.701 et seq.; MSA 18.595(51) et seq. As a consequence, the DNR thereafter denied plaintiff's application for a permit. Plaintiff never submitted another application.

After some administrative procedures and an appeal to this Court which are not pertinent to the issues herein, plaintiff filed the instant action. The subsequent trial essentially involved two theories: (1) that the designation of plaintiff's property as wetland and an environmental area constituted a taking by inverse condemnation which deprived plaintiff of an economically viable use of his land and for which plaintiff was entitled to compensation, MCL 281.721; MSA 18.595(71), US Const, Ams V and XIV, and Const 1963, art 10, § 2, and (2) that such designation constituted a de facto taking within the meaning of the Uniform Condemnation Procedures Act (UCPA), MCL 213.51 et seq.; MSA 8.265(1) et seq. Much of the testimony

at trial involved what uses the DNR probably would permit on plaintiff's property. DNR representative Martin Jannereth testified that he was reluctant to see the environmental area developed, but that it is difficult to know for certain if all possible future permits would be denied because he could not tell what might be possible without reviewing a specific request for a permit. A permit is required to drain, fill, dredge or alter the soil or vegetation in that area. DNR representative Roger Hack similarly testified regarding the difficulty in surmising what the DNR would permit plaintiff to do on the property without an application for a permit. However, Hack testified that, since 1986, the DNR has informed plaintiff that some upland channeling and a marina development would be feasible, but plaintiff never submitted an application. Furthermore, just prior to the trial in this case, the DNR outlined a proposal that it believed "had merit and would meet with permit approval." However, Hack testified that that discussion ended because plaintiff wanted to build only the original development plaintiff envisioned. A permit for that development, according to the DNR representatives' testimony, would not be granted.

The court in this case sat as both the Chippewa Circuit Court and the Court of Claims. It concluded that the DNR's actions of designating plaintiff's property as wetland and an environmental area caused plaintiff's property to decline in value and, moreover, that "[t]he absence of any clearly established standards which might guide the land owner in the development of his land, is tantamount to an arbitrary and capricious taking of the land without compensation." Therefore, the court awarded plaintiff as damages the difference in the price plaintiff paid for the property and the current market value, specifically $50,000.

Before we begin our analysis, we must make clear what plaintiff challenged below and, thus, what is at issue on appeal. Plaintiff did not challenge the validity of the statutes or regulations involved in this case. Nor did he challenge the DNR's denial of his request to dredge the drainage ditch. Instead, he merely argued that the pertinent designation of his property under the relevant statutes constituted a taking for which he was entitled to compensation. Therefore, the limited inquiry before us is whether the government action in this case constituted a taking.[1]

Governmental land-use regulation may, under extreme circumstances, amount to a taking of the affected private property, which, in turn, entitles the property owner to just compensation under the federal and Michigan constitutions. US Const, Am V; Const 1963, art 10, § 2. See, e.g., *United States v Riverside Bayview Homes, Inc,* 474 US 121, 126; 106 S Ct 455; 88 L Ed 2d 419 (1985); *Blue Water Isles Co v Dep't of Natural Resources,* 171 Mich App 526, 535-536; 431 NW2d 53 (1988); *Poirier v Grand Blanc Twp,* 167 Mich App 770, 773-774; 423 NW2d 351 (1988), lv den 431 Mich 913 (1988). Although the question whether a taking has occurred in a particular case "has proved to be a problem of considerable difficulty," *Penn Central Transportation Co v City of New York,* 438 US 104, 123; 98 S Ct 2646; 57 L Ed 2d 631 (1978), reh den 439 US 883; 99 S Ct 226; 58 L Ed 2d 198 (1978), both parties agree, as do we, that the factors we should use in determining whether application of a land-use regulation to a particular piece of property is a taking include the economic

---

[1] This is, of course, the issue involved in the DNR's cross appeal. However, because our resolution of this issue necessitates our reversing the decision of the trial court, it is the only issue we will address in this opinion. In other words, we need not address the issues plaintiff raises in his appeal.

impact of the regulation on the property owner, particularly the extent to which the regulation interfered with "distinct investment-backed expectations," and the character of the governmental action. *Id.,* 438 US 124; *Keystone Bituminous Coal Ass'n v DeBenedictis,* 480 US 470; 107 S Ct 1232; 94 L Ed 2d 472 (1987); *Blue Water Isles, supra* at 536. The test, in pertinent part, looks to whether the regulation deprives the owner of an economically viable use of his land. *Riverside Bayview Homes,* 474 US 126-127. Furthermore, with regard to the economic impact inquiry, we emphasize two points: (1) the mere fact that a regulation deprives the owner of the most profitable use of his property does not necessarily establish the owner's right to just compensation, *Andrus v Allard,* 444 US 51, 66; 100 S Ct 318; 62 L Ed 2d 210 (1979); *United States v Central Eureka Mining Co,* 357 US 155, 168; 78 S Ct 1097; 2 L Ed 2d 1228 (1958), reh den 358 US 858; 79 S Ct 9; 3 L Ed 2d 91 (1958), and (2) although a comparison of values of the property before and after is relevant, it is not conclusive. *Andrus,* 444 US 66; *Goldblatt v Town of Hempstead,* 369 US 590, 594; 82 S Ct 987; 8 L Ed 2d 130 (1962).

Applying these factors to this case, we conclude that the trial court's finding that a taking occurred is clearly erroneous. *Blue Water Isles, supra* at 535. Speaking in general terms, the Wetland Protection Act requirement that a person obtain a permit before engaging in certain uses of his or her property, see MCL 281.705; MSA 18.595(55), does not itself take the property. See, e.g., *Riverside Bayview Homes,* 474 US 126-127. Similarly, we do not believe that the mere designation of the majority of the property as wetland constitutes a taking. Despite the pertinent designations at issue and the denial of the permit to

dredge the drainage ditch, plaintiff is free to submit further applications for developments which might be approved. See, e.g., *Agins v City of Tiburon,* 447 US 255, 262-263; 100 S Ct 2138; 65 L Ed 2d 106 (1980). In other words, the designations themselves do not deprive plaintiff of an economically viable use of his land. Nor are we aware of any authority supporting the lower court's determination that "the absence of any clearly established standards which might guide [plaintiff] in the development of his land" constitutes a taking. With regard to the lower court's misplaced focus, we emphasize that plaintiff does not challenge the governmental action in this case on the ground of a due process violation.

We must, instead, narrow our focus to the denial of the permit in this case, which, though, presumably was tantamount to denying plaintiff permission to build the original development he envisioned. Moreover, DNR representative Hack testified that the original development plaintiff had planned would not be approved. However, even if plaintiff suffered a diminution in the value of his property as a result of the designations and even though his application for a permit to dredge a drainage ditch was denied, a taking did not occur. Most importantly, DNR representatives testified that development projects which plaintiff has not yet applied for might be approved. We decline to conclude that the mere fact that plaintiff cannot dredge the drainage ditch for which he sought a permit constitutes a taking in light of the many other uses of the property which might be approved. In other words, the economic impact of the designations and denial of a permit to dredge is not so severe as to compel us to hold that a taking occurred. On the record before us, plaintiff still has economically viable uses of his property. More-

over, in the absence of a permit request for the original development as planned, we are reluctant to hold that the DNR's anticipation that such would be denied was a taking. Nevertheless, we note that we would be hard pressed to find a taking merely because plaintiff could not build the original development he envisioned.

We emphasize that our holding today is limited to the present record. If at some point in the future plaintiff can show that the economic impact of the pertinent statutes has, in fact, become more severe, he may then be entitled to compensation.

Finally, we note that plaintiff could not properly rely on the UCPA in bringing his claim. See *Lim v Dep't of Transportation,* 167 Mich App 751, 755; 423 NW2d 343 (1988), lv den 432 Mich 882 (1989). Although the DNR did not raise such an argument below, we may review it because such consideration is necessary to a proper determination of the case and because the question is one of law. See, e.g., *Richards v Pierce,* 162 Mich App 308, 316; 412 NW2d 725 (1987).

Reversed.