575 N.W.2d 531 (1998)
456 Mich. 570
K & K CONSTRUCTION, INC., J.F.K. COMPANY, and Resorts and Company, Plaintiffs-Appellees,
v.
DEPARTMENT OF NATURAL RESOURCES, Defendant-Appellant.
Docket No. 106712, Calendar No. 13.
Supreme Court of Michigan.
Argued November 5, 1997.
Decided March 24, 1998.
*533 Robert L. Bunting, Oxford, for plaintiffs-appellees.
Frank J. Kelley, Attorney General, Thomas L. Casey, Solicitor General, A. Michael Leffler, Assistant in Charge, and Stanley F. Pruss and S. Peter Manning, Assistant Attorneys General Lansing, for defendant-appellant.
John F. Rohe and Gail S. Gruenwald, Petoskey, amicus curiae for Tipp of the Mitt Watershed Council.
Chris A. Shafer, Lansing, amicus curiae for Michigan Natural Areas Council.
Olson, Noonan, Ursu & Ringsmith, P.C. by James M. Olson, John D. Noonan, and Christopher M. Bzdok Traverse City, amicus curiae for Michigan Environmental Council, League of Women Voters of Michigan, Sierra Club, West Michigan Environmental Action Council, Michigan Land Use Institute, Ecology Center of Ann Arbor, Mid-Michigan Action Council, Citizens Against Pollution, Citizens for Alternatives to Chemical Contamination, Eastern Michigan Environmental Action Council, and Clean Water Action Council.
Lois J. Schiffer, Assistant Attorney General, W. Francesca Ferguson, Assistant United States Attorney, and Edward Shawaker and Timothy J. Dowling, Attorneys, Environment and Natural Resources Division Washington, DC, Jonathan Z. Cannon, General Counsel, and David F. Coursen, Attorney, Office of General Counsel, amicus curiae for United States Environmental Protection Agency.
Marc K. Shaye, Troy, James S. Burling, and Stephen E. Abraham Sacramento, CA, amicus curiae for Pacific Legal Foundation.
Kohl, Secrest, Wardle, Lynch, Clark & Hampton by Gerald A. Fisher (Susan Marie Connor, of counsel, American Planning Association, Chicago, IL), Farmington Hill, amicus curiae for Michigan Municipal League, Michigan Townships Association, and Public Corporation Law Section of the State Bar of Michigan.
Butzel Long by William R. Ralls, John H. Dudley, Jr., and Steven D. Weyhing, Lansing, amicus curiae for Michigan Peat, Inc.
Twohey Magginni, P.L.C. by Patrick M. Muldoon and Ralph Wyngarden (John D. Echeverria and Enrico G. Nardone, of counsel, Washington, DC), Grand Rapids, amicus curiae for Michigan Audubon Society, Detroit Audubon Society, and National Audubon Society.
Glenn P. Sugameli, Washington, DC, Carol Bambery, Lansing, and M. Cameron Davis, Ann Arbor, amicus curiae for Michigan United Conversation Clubs and National Wildlife Federation.

*532 Opinion
MICHAEL F. CAVANAGH, Justice.
This case requires us to decide whether the denial of a permit to fill wetlands on the plaintiffs' property constitutes a regulatory taking of the property without just compensation. On two separate occasions, plaintiffs applied to the Department of Natural Resources for a permit to fill wetlands on a portion of their property so that they could commercially develop the land. Both permits were denied, and the plaintiffs filed the instant action, claiming that the permit denials constituted a regulatory taking of their land. The trial court found that the permit denials effectively rendered part of the plaintiffs' land worthless; therefore, the DNR was required to compensate the plaintiffs. The Court of Appeals affirmed. We granted leave, and we now reverse in part and remand the case to the trial court.

I
Plaintiffs J.F.K. Company and Resorts and Company own eighty-two acres of property near M-59 in Waterford Township. J.F.K. is a Michigan limited partnership, consisting of the five children of Joseph and Elaine Kosik. Resorts and Company is a Michigan copartnership, consisting of Wisconsin Resorts, Inc., and J.F.K. K & K Construction Co., Inc., is a Michigan corporation. Mr. Kosik and his son are the sole shareholders of K & K. It has no ownership interest in the property, but it has contracted with the owners to build a C.J. Barrymore's restaurant and sports complex on the property.
*534 Mr. and Mrs. Kosik originally acquired the property in question during 1976. The property was transferred to J.F.K. by quitclaim deed in 1986 so J.F.K. could develop the land. The Kosiks retained a reversionary interest in part of the property, conditioned upon J.F.K.'s ability to obtain financing for the project. Resorts and Company obtained its interest in the property about the same time.
The trial court found that the property consists of four defined parcels, all of which are contiguous. Parcel one consists of approximately fifty-five acres, twenty-seven acres of which are wetlands. It is zoned for commercial use.[1] Parcel two (sixteen acres) is directly south of parcel one. It contains a small portion of the wetlands. Parcel three (9.34 acres) is directly south of parcel two, and does not contain any wetlands. Parcel four (3.4 acres) borders the south side of parcel one, and the east side of parcel two. It is also free of wetlands. Parcels two, three, and four are zoned for multiple family residential housing (R-2). Parcel three has already been developed; parcels two and four have not been developed.
Plaintiffs' original plan, referred to as the "Barrymore Plan," was to build a restaurant and sports complex on fortytwo acres of parcel one, and several multiple-family residential structures with a storm-water retention pond on parcels two and four. Pursuant to this plan, plaintiffs applied for a permit to fill part of parcel one in June 1988. The DNR denied the permit, finding that approximately twenty-eight acres of the property were protected wetlands under the Wetland Protection Act (WPA), M.C.L. § 281.701 et seq.; M.S.A. § 18.595(51) et seq., since repealed and replaced. Plaintiffs did not file an administrative appeal. Instead, they filed the instant action in December 1988. In May 1990, plaintiffs submitted a second application for a permit to fill approximately three acres of wetland, while mitigating the fill by converting five acres of upland to wetland. This second application, referred to as the "Goga Plan," would have developed the primarily upland ring around the wetland, while leaving most of the wetland intact. The second permit was also denied, and again no administrative appeal was taken.
The case was tried in December 1991. The only issue before the court was whether the permit denials constituted takings of the plaintiffs' property. The trial court held that parcel one was the only property relevant to the taking analysis, and that denial of the permit to construct the restaurant and sports complex effectively rendered plaintiffs' property commercially worthless. The DNR was required to compensate plaintiffs for the full value of their property.
Once faced with a substantial adverse judgment, the DNR attempted to mitigate the loss in value of the property by allowing development to commence under the "Goga Plan."[2] Even so, the trial court held that the DNR owed plaintiffs damages both for a "temporary" taking of the land that could now be developed under the Goga Plan, and also for the full value of the wetlands that were not usable under the Goga Plan. The trial court ultimately decided that the DNR was liable for approximately $3.5 million plus interest for the unusable interior wetlands, and approximately $500,000, plus interest for the temporary taking. The Court of Appeals affirmed the trial court's judgment. 217 Mich.App. 56, 551 N.W.2d 413 (1996).

II
The Fifth Amendment of the United States Constitution provides in part: "nor *535 shall private property be taken for public use, without just compensation."[3] Similarly, the Michigan Constitution provides:
Private property shall not be taken for public use without just compensation therefor being first made or secured in a manner prescribed by law. Compensation shall be determined in proceedings in a court of record. [Const. 1963, art. 10, § 2.]
The United States Supreme Court has recognized that the government may effectively "take" a person's property by overburdening that property with regulations. As stated by Justice Holmes, "[t]he general rule at least is, that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 415, 43 S.Ct. 158, 160, 67 L.Ed. 322 (1922). While all taking cases require a case-specific inquiry, courts have found that land use regulations effectuate a taking in two general situations: (1) where the regulation does not substantially advance a legitimate state interest, or (2) where the regulation denies an owner economically viable use of his land. Keystone Bituminous Coal Ass'n v. DeBenedictis, 480 U.S. 470, 485, 107 S.Ct. 1232, 1242, 94 L.Ed.2d 472 (1987).
The second type of taking, where the regulation denies an owner of economically viable use of land, is further subdivided into two situations: (a) a "categorical" taking, where the owner is deprived of "all economically beneficial or productive use of land," Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1015, 112 S.Ct. 2886, 2893, 120 L.Ed.2d 798 (1992); or (b) a taking recognized on the basis of the application of the traditional "balancing test" established in Penn Central Transportation Co. v. New York City, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978).
In the former situation, the categorical taking, a reviewing court need not apply a case-specific analysis, and the owner should automatically recover for a taking of his property. Lucas, supra at 1015, 112 S.Ct. at 2893. A person may recover for this type of taking in the case of a physical invasion of his property by the government (not at issue in this case), or where a regulation forces an owner to "sacrifice all economically beneficial uses [of his land] in the name of the common good...." Id. at 1019, 112 S.Ct. at 2895 (emphasis in original). In the latter situation, the balancing test, a reviewing court must engage in an "ad hoc, factual inquir[y]," centering on three factors: (1) the character of the government's action, (2) the economic effect of the regulation on the property, and (3) the extent by which the regulation has interfered with distinct, investment-backed expectations. Penn Central, 438 U.S. at 124, 98 S.Ct. at 2659.
The trial court found that the WPA had effectively eliminated the economically viable use of plaintiffs' land; therefore, plaintiffs were due compensation for a taking of their property. Significantly, the trial court only considered the effect of the regulations on parcel one of plaintiffs' property, finding that parcel one was the only relevant parcel for the taking analysis. The Court of Appeals upheld the award of damages to the plaintiffs for a taking. It held that the WPA eliminated all economically viable use of the plaintiffs' land, which meant that plaintiffs could recover categorically for the taking under the United States Supreme Court's decision in Lucas.[4]

III
Before we decide whether the regulations imposed on plaintiffs' property constitute a taking, we must first address an important preliminary matter. The first step in our analysis is to determine which parcel or parcels owned by plaintiffs are relevant for the taking inquiry. The determination of what is referred to as the "denominator parcel" is important because it often affects the analysis *536 of what economically viable uses remain for a person's property after the regulations are imposed. Plaintiffs urge us to focus our analysis only on parcel one, while defendant argues that we must look at all four of plaintiffs' parcels as a single unit.
One of the fundamental principles of taking jurisprudence is the "nonsegmentation" principle. This principle holds that when evaluating the effect of a regulation on a parcel of property, the effect of the regulation must be viewed with respect to the parcel as a whole. Keystone, 480 U.S. at 498, 107 S.Ct. at 1249; Korby v. Redford Twp., 348 Mich. 193, 198, 82 N.W.2d 441 (1957). Courts should not "divide a single parcel into discrete segments and attempt to determine whether rights in a particular segment have been entirely abrogated." Penn Central, 438 U.S. at 130, 98 S.Ct. at 2662. Rather, we must examine the effect of the regulation on the entire parcel, not just the affected portion of that parcel.
The denominator parcel is also not limited to each parcel of property. As explained by the United States Court of Appeals for the Federal Circuit in Tabb Lakes, Ltd. v. United States, 10 F.3d 796, 802 (C.A.Fed., 1993):
Clearly, the quantum of land to be considered is not each individual lot containing wetlands or even the combined area of wetlands. If that were true, the Corps' protection of wetlands via a permit system would, ipso facto, constitute a taking in every case where it exercises its statutory authority. [Citations omitted.]
This Court has previously found the nonsegmentation principle applicable to two adjoining parcels of property with unity of ownership. Bevan v. Brandon Twp., 438 Mich. 385, 475 N.W.2d 37 (1991). In Bevan, the plaintiffs purchased two contiguous lots of land separately. The plaintiffs were only allowed to build a single house on the two lots because of township land-use ordinances adopted after they had purchased the property. The plaintiffs sued, claiming that the regulations constituted an unconstitutional taking of their property. The lower courts agreed with them, finding that the regulation of the property constituted a regulatory taking of one of plaintiffs' two parcels. This Court reversed, stating:
As a general rule, a person's property should be considered as a whole when deciding whether a regulatory taking has occurred. 1 Rathkopf, Zoning and Planning, § 6.07(5), p. 6-45.

* * * * * *
This Court has recognized that contiguous lots under the same ownership are to be considered as a whole for purposes of judging the reasonableness of zoning ordinances, despite the owner's division of the property into separate, identifiable lots. [438 Mich. at 393, 395, 475 N.W.2d 37.]
The Court refused to apply the taking analysis to only one of the two lots; instead, it viewed the property "in its entirety." Id. at 397, 475 N.W.2d 37.
In the present case, the Court of Appeals noted that plaintiffs' parcels were contiguous, just as those in Bevan. However, the Court found Bevan distinguishable because the property in that case concerned two parcels under the same ownership and subject to a single-zoning scheme. 217 Mich. App. at 65, 551 N.W.2d 413. While we recognize that this case is not factually the same as Bevan, the principles underlying the decision in Bevan require us to conclude that the denominator parcel is more than just parcel one of plaintiffs' property. The relevant denominator in this case includes at least parcels one, two, and four.
Determining the size of the denominator parcel is inherently a factual inquiry. As explained in Ciampitti v. United States, 22 Cl Ct 310, 318-319 (1991):
Factors such as the degree of contiguity, the dates of acquisition, the extent to which the parcel has been treated as a single unit, the extent to which the protected lands enhance the value of remaining lands, and no doubt many others would enter the calculus. The effect of a taking can obviously be disguised if the property at issue is too broadly defined. Conversely, a taking can appear to emerge if the property is viewed too narrowly. The effort should be to identify the parcel as realistically and fairly as possible, given *537 the entire factual and regulatory environment.
In this case it is neither realistic nor fair to consider only parcel one for purposes of the taking analysis. Parcels one, two, and four are bound together through their contiguity, the unity of J.F.K.'s ownership interest in all three of these parcels, and plaintiffs' proposed comprehensive development scheme. Thus, the Court of Appeals erred when it concluded that it was proper for the trial court to consider only parcel one in the taking analysis.
First, there is no dispute that parcels one, two, and four are contiguous. Second, J.F.K. had an ownership interest in parcels one, two, and four. At the time the instant litigation was started, as well as when the permits were submitted to and denied by the DNR, J.F.K. was the title owner of all three parcels of property.[5] As explained in Bevan, contiguity and common ownership create a common thread tying these three parcels together for the purposes of the taking analysis.[6]
Third, the connection between parcels one, two, and four is further solidified by plaintiffs' comprehensive development plans. The plaintiffs' proposed use of the property is highly relevant to establishing the denominator parcel. Where "a property owner treats a series of properties as one income-producing unit, the value lost to the claimant is not simply the loss of the segregated parcel affected by the Government action," rather it is the loss as it relates to the value of the entire unit. Forest Properties, Inc v. United States, 39 Fed.Cl. 56, 73 (1997). Both permit applications filed by plaintiffs with the DNR contemplated a comprehensive development using part of parcels one, two, and four.[7] In a similar situation, the United States Court of Claims held that a plaintiff may not separate a certain lot of property from others that he owned with regard to his taking claim when he had previously treated them as "a single parcel for purposes of purchase and financing." Ciampitti, supra at 320. Indeed, it is inappropriate to allow a person to "sever the connection he forged when it assists in making a legal argument." Id. Here, the plaintiffs forged a connection between parcels one, two, and four through the proposed development scheme and permit applications.[8] It would be inappropriate to allow plaintiffs to sever this connection now that it makes their legal argument stronger.
Finally, the reliance of the Court of Appeals on Loveladies Harbor, Inc. v. United States, 28 F.3d 1171 (C.A.Fed., 1994), is misplaced. In Loveladies, the plaintiffs agreed to convey 38.5 acres of wetland to the state in return for a permit to develop the remaining 12.5 acres of their land. However, the plaintiffs *538 were denied a federal permit to fill the 12.5 acres on the basis of the state's recommendation to the Army Corps of Engineers that the permit be denied. In the subsequent action, the defendants argued that the court should consider all fifty-one acres of the plaintiffs' property for the taking analysis, not just the 12.5 listed in the permit application. The court rejected the defendants' argument, explaining that it was illogical to "require Loveladies to convey to the public the rights in the 38.5 acres in exchange for the right to develop 12.5 acres, and then to include the value of the grant as a charge against the givers." Id. at 1181. Similarly, it seems illogical in this case for J.F.K. to apply for permits to develop parcels one, two, and four, and then for the Court to consider only parcel one in the taking analysis.
We conclude that the lower courts erred in limiting their analysis of the taking claim to parcel one. In this case, the plaintiffs proposed a comprehensive development, using parts of parcels one, two, and four of the property. The taking claim is based on the DNR's refusal to issue permits to allow this comprehensive development. Thus, this case is analogous to Bevan, supra. At the least, all three of plaintiffs' parcels of property should be considered in the taking analysis.[9]
We note that defendant has urged us also to include parcel three as part of the denominator parcel. Parcel three is contiguous with the other parcels in this case, and J.F.K. does have an ownership interest in parcel three. However, the record is unclear with respect to the extent of J.F.K.'s ownership interest in parcel three. More importantly, parcel three was not included in plaintiffs' development plan; it had previously been developed.
However, this should not end the inquiry. The failure to include a parcel of land in a development plan should not, by itself, exclude that parcel from consideration as part of the denominator. To so conclude would encourage piecemeal development. Thus, while we can safely state that the denominator parcel includes parcels one, two, and four, we believe it is inappropriate to conclude one way or the other with regard to parcel three. On remand, we instruct the trial court to determine the extent of J.F.K.'s ownership interest in parcel three, and whether it is sufficiently connected to the other parcels to conclude that all four parcels should be considered in the taking analysis.[10]

IV
Next, we address the Court of Appeals conclusion that the regulation of plaintiffs' land constituted a regulatory taking. As explained in part II, a regulatory taking exists when: (1) the regulation fails to advance a legitimate state interest, or (2) the regulation denies an owner economically viable use of his land. This second type of taking is subdivided into: (a) a categorical taking, or (b) a taking recognized on the basis of the application of the traditional balancing test. Because plaintiffs concede that the state has a legitimate interest in protecting and preserving wetlands,[11] the *539 first type of taking is not at issue. Thus, we limit our analysis to whether plaintiffs were deprived of economically viable use of their land, either by a categorical taking or under the balancing test.

A. Categorical Taking
When considering only parcel one, the Court of Appeals concluded that the regulation of plaintiffs' property constituted a categorical taking of their land. However, when we expand our consideration of plaintiffs' property to include at least all of parcels one, two, and four, it is clear that there was not a categorical taking of plaintiffs' property.
For a categorical taking to exist, there must be a denial of "all economically beneficial or productive use of land." Lucas, supra at 1015, 112 S.Ct. at 2893. In Lucas, the plaintiff purchased two lots of land approximately three hundred feet from a beach, with plans to build single-family houses on the property. A subsequent revision of South Carolina's Coastal Tidelands & Wetlands Act[12] thwarted the plaintiff's planned construction, and prevented him from developing the land in any way. This led the Court to conclude that "when the owner of real property has been called upon to sacrifice all economically beneficial uses in the name of the common good, that is, to leave his property economically idle, he has suffered a taking." Id. at 1019, 112 S.Ct. at 2895 (emphasis in original). The fact that the property owner must be completely deprived of economically beneficial use of his property was emphasized in a footnote responding to Justice Stevens' dissent:
Justice Stevens criticizes the "deprivation of all economically beneficial use" rule as "wholly arbitrary," in that "[the] landowner whose property is diminished in value 95% recovers nothing," while the landowner who suffers a complete elimination of value "recovers the land's full value." Post [505 U.S.] at 1064[, 112 S.Ct. at 2919]. This analysis errs in its assumption that the landowner whose deprivation is one step short of complete is not entitled to compensation. Such an owner might not be able to claim the benefit of our categorical formulation, but, as we have acknowledged time and again, "[t]he economic impact of the regulation on the claimant and ... the extent to which the regulation has interfered with distinct investment-backed expectations" are keenly relevant to takings analysis generally. [Penn Central, 438 U.S. at 124, 98 S.Ct. at 2659.] [Id. at 1019, n. 8, 112 S.Ct. at 2895, n. 8.]
Unlike the property in Lucas, plaintiffs' land in the present case was not left economically idle. In Lucas, the plaintiff was completely prohibited from developing any part of his land. Here, however, plaintiffs were not prohibited from developing the remaining upland on parcel one, as well as almost all of parcels two and four. Indeed, plaintiffs' second permit application clearly contemplated such development. While the commercial value of the land may have been reduced by the restrictions placed on it by the WPA, it was not rendered worthless or economically idle.[13]

B. The Balancing Analysis
As Lucas indicates, regulations that do not rise to the level of a categorical taking may still be so burdensome as to rise to the level of a taking. Id. at 1019-1020, n. 8, 112 S.Ct. at 2895-96, n. 8. Therefore, plaintiffs must prove a taking on the basis of the balancing analysis. As explained in part II, this requires an "ad hoc, factual inquir[y]" into three factors: (1) the character of the governmental action, (2) the economic effect of the regulation on the claimant, and (3) the *540 extent to which the regulation interfered with distinct investment-backed expectations. Penn Central at 124, 98 S.Ct. at 2659. While there is no set formula for determining when a taking has occurred under this test, it is at least "clear that the question whether a regulation denies the owner economically viable use of his land requires at least a comparison of the value removed with the value that remains." Bevan, 438 Mich. at 391, 475 N.W.2d 37, citing Keystone Bituminous Coal Ass'n v. DeBenedictis, 480 U.S. at 497, 107 S.Ct. at 1248.
In the present case, the trial court made several findings of fact with regard to the economic effect of the WPA on parcel one. However, it failed to take into consideration the value of the property when it included parcels two and four. We do not know the value of all three parcels combined, either with or without the regulations. It would be imprudent to decide whether there was a taking of plaintiffs' property on the basis of an inadequate record. Therefore, we reverse the decision of the Court of Appeals, and remand the matter to the trial court for further consideration. On remand, the trial court should compare the value removed from the plaintiffs' land, and also calculate what value remains. It then must reevaluate the case under the three-part balancing test.

V
The decision of the Court of Appeals is reversed and the case is remanded to the trial court. On remand, the trial court must determine (1) if parcel three of plaintiffs' property should be included in the denominator parcel, and (2) whether the effect of the regulations on the entire denominator parcel resulted in a taking under the balancing test.
MALLETT, C.J., and BRICKLEY, BOYLE, WEAVER and MARILYN J. KELLY, JJ., concurred with MICHAEL F. CAVANAGH, J.
TAYLOR, J., not participating.
NOTES
[1] Two portions of parcel one have already been developed. The J.F.K. office building has been built on part of the parcel that borders North Oakland Boulevard, and a Ram's Horn restaurant has been developed and sold from a portion of the land that borders M-59.
[2] The trial court was required by statute to give defendant the option of mitigating its damages. M.C.L. § 324.30323; M.S.A. § 13A.30323 states that once the court has determined that the department's actions constitute a taking, the court shall order the department, at the department's option, to do one or more of the following:

(a) Compensate the property owner for the full amount of the lost value.
(b) Purchase the property in the public interest...
(c) Modify its action or inaction with respect to the property so as to minimize the detrimental affect to the property's value.
[3] The Fifth Amendment's Taking Clause is applied to the states through the Fourteenth Amendment. Penn Central Transportation Co. v. New York City, 438 U.S. 104, 122, 98 S.Ct. 2646, 2658, 57 L.Ed.2d 631 (1978).
[4] Lucas was decided only a few months before the trial judge issued his opinion in the instant case, and the opinion does not discuss the categorical-taking standard. However, the Court of Appeals found the categorical-taking analysis applicable on the basis of the trial court's findings.
[5] The trial court recognized the fact that J.F.K. is the titled property owner of parcel one. However, it found that there was an "equitable lien on the title to the property in favor of Mr. and Mrs. Kosik." At the very least, the record indicates that J.F.K. shares a joint ownership interest in the property with Mr. and Mrs. Kosik. We find this joint ownership interest, combined with the fact that J.F.K. was the sole titled owner of the property at the time that the alleged taking occurred, sufficient to create a common ownership interest in all of parcels one, two, and four.
[6] We acknowledge that these three parcels of property do have different zoning classifications. However, the fact that plaintiffs intended to use all three of them in a single development plan negates the fact that they were zoned differently, in this case. See Zealy v. City of Waukesha, 201 Wis.2d 365, 548 N.W.2d 528 (1996) (although zoning changes by the city resulted in three different zoning classifications on the plaintiff's parcel of land, the entire 10.4 acres of the parcel were considered relevant to the taking analysis rather than the 8.2 acres that were rezoned).
[7] The first permit filed with the DNR does not clearly state how many acres of plaintiffs' property were going to be involved in the development. However, there was testimony at trial explaining that along with the construction of the C.J. Barrymore's restaurant and sports complex on parcel one, plaintiffs planned on building a storm-water retention pond and multiple-family residential structures on parcels two and four. The second permit application also contemplated using parcels two and four as part of the development. It described the proposal as "development of a 72.2 acre parcel which includes commercial, general office, multiple housing and senior citizen congregate care facilities."
[8] Just as in the case at hand, the plaintiff's suit in Forest Properties was for the taking of 5.4 acres of lake bottom property when their permit application described the project as "53.36 acres existing plus 5.4 acres lake bottom." Forest Properties at 63. The Court of Claims found this as evidence of the unity of "development and the economic expectations" of the plaintiff. Id.
[9] In this case, two parts of parcel one as originally purchased have been developed. Defendant argues that the trial court failed to consider these two parcels in its ruling on the value of parcel one, but it is unclear from the trial court's opinion whether this was the case. We see no reason for these two parts of parcel one to be excluded from the taking analysis. They were both part of parcel one as originally purchased, and neither was sold or developed before the enactment of the regulations in question. See Blue Water Isles Co. v. DNR, 171 Mich.App. 526, 536, 431 N.W.2d 53 (1988) (two parcels sold to a third party before regulatory action was considered in taking analysis).
[10] There is no single set of factors or "test" that the trial court should apply when determining the extent of the denominator parcel. Obviously the extent of plaintiffs' ownership interest in the relevant parcels, the contiguity of the parcels, and the extent to which the parcels have been treated as a single unit should all be considered. Some other factors that may be instructive include: whether the relevant parcels were part of the original parcel purchased, see Ciampitti, Blue Water Isles Co., and Loveladies Harbor, supra; the date of the parcels' purchase and the extent of development relative to the date of enactment of the challenged regulations, Loveladies Harbor, supra; and the zoning of the parcels, Bevan, supra.
[11] See Harkins v. Dep't of Natural Resources, 206 Mich.App. 317, 324, 520 N.W.2d 653 (1994) ("the WPA unquestionably advances a legitimate state interest").
[12] S.C. Code, § 48-39-10 et seq.
[13] Even if we did limit our analysis to parcel one, the Court of Appeals conclusion that a categorical taking had occurred is not supported by the record. In its first opinion, the trial court stated: "While it is true that some financial value will remain, this Court finds that what little economic value remains is but a small fraction of the economic value the property would have if all of it could be developed." (Emphasis added.) Thus, while the regulations may have diminished the value of plaintiffs' land, this diminution in value would not give rise to a categorical taking. Instead, it should be analyzed under the traditional case-specific inquiry.