_____

No. 95-2913
_____

Outdoor Graphics, Inc., an          *
Iowa Corporation,                   *
                                    *
          Appellant,                *
                                    * Appeal from the United States
     v.                             * District Court for the
                                    * Southern District of Iowa.
City of Burlington, Iowa,           *
                                    *
          Appellee.                 *
                                    *
_____       *
                                    *
                                    *
                                    *
Outdoor Advertising Association     *
of Iowa; Defenders of Property      *
Rights,                             *
                                    *
          Amicus Curiae.            *

_____

Submitted:  March 13, 1996

Filed:  December 27, 1996
_____

Before McMILLIAN, BEAM, and HANSEN, Circuit Judges.
_____

BEAM, Circuit Judge.

Outdoor Graphics, Inc. (Outdoor) appeals an adverse judgment in an action for damages and injunctive relief in this takings case.  We affirm.

## I.  BACKGROUND

Outdoor asserts that the City of Burlington, Iowa (the City) deprived it of property without just compensation, in violation of the Fifth and Fourteenth Amendments to the United States

Constitution, by enacting an ordinance that requires removal of its billboards from residential neighborhoods.

The City first adopted a residence district zoning ordinance in 1949. The ordinance required a landowner to obtain permission to erect any structure other than a residence, school, church or similar building in areas zoned residential. Outdoor has presented no evidence that its billboards were erected before this ordinance took effect. The billboards were in place, however, in 1959, when the City adopted a zoning ordinance that required all nonconforming uses to obtain a certificate within a year. All but one of Outdoor's billboards are located in residential zones.[1] In 1960, the City issued certificates of nonconforming use for the billboards (which were then owned by Iowa Posting Company). The certificates provide that any change in ownership requires certification of a nonconforming use by the building inspector.

In 1986, Outdoor purchased the billboards and property from Iowa Posting Company for $167,500. Outdoor purchased thirty-two billboards at ten locations in Burlington.[2] Payments on the contract are due until the end of 1996. Outdoor's president, Donald A. Brown, testified that he believed the business was undervalued at that price. Outdoor purchased the company with the knowledge that the billboards were nonconforming uses and were subject to a recertification of such uses by the building inspector. Despite the change in ownership, recertification of the nonconforming uses was never sought by Outdoor.

------

[1]The billboard that is not in a residential area is nonetheless in violation of the City's set-back requirements. Our holding applies equally to that property.

[2]Outdoor owns the property on which all but three of the billboards are placed and leases the property for those three parcels of land. The leases provide for termination on thirty days notice.

Since the purchase, Outdoor Graphics has grossed approximately $100,000 each year on its billboard business in Burlington, with net profits averaging $13,000 each year.[3] The value of the billboard business is estimated by Outdoor's appraiser to be $250,000. A real estate appraiser testified that because the real property underlying the billboards is irregular in shape, it is marketable only to adjacent landowners for a fraction of the cost of the billboard business.

In 1988, the City enacted Chapter 17.66 of the Burlington Municipal Code.[4] The new ordinance prohibits billboards in any residential neighborhood. It is undisputed that the ordinance was duly passed and that Outdoor and other Burlington residents were offered notice and an opportunity to be heard. The City's stated reasons for enacting the ordinance were safety and aesthetics. It provides a five-year "grace period," or amortization period.[5] All nonconforming billboards were to be removed five years after the enactment of the ordinance, without any payment to the billboard owners. On September 2, 1993, more than five years after the ordinance was enacted, the City sent Outdoor a letter demanding

---

[3]The net profit may seem low, but a major expense was Mr. Brown's salary of over $80,000 per year.

[4]Although Chapter 17.66 was later amended, those amendments are not relevant to this case.

[5]An amortization period allows a nonconforming owner to recoup an investment and also sometimes affords the owner the additional benefit of monopoly status during the period since no new competitive nonconforming uses are allowed. 8A Eugene McQuillin, Municipal Corporations § 25.190 (3d ed. 1994). It is in reality a notice to owners that they have a period of time to make whatever adjustments or other arrangements they can to accommodate the regulation. Art Neon Co. v. City and County of Denver, 488 F.2d 118, 121 (10th Cir. 1973). An amortization period contains no connotation of compensation nor any requirement of compensation. Id. Amortization periods thus enable owners to recoup or minimize losses. Naegele Outdoor Advertising, Inc. v. City of Durham, 844 F.2d 172, 177 (4th Cir. 1988).

removal of the billboards.  The City did not offer Outdoor any compensation.

Outdoor then filed this action alleging that the City had deprived it of property without just compensation in violation of the Fifth and Fourteenth Amendments to the Constitution and Sections 1 and 18 of the Iowa Constitution.  It also alleged a violation of Iowa Code Section 306.[6]  After a trial, the district court found no constitutional or statutory violations.  On appeal, Outdoor contends that the ordinance completely destroys the value of its property and that therefore the district court erred in finding that there has been no taking.

## II.  DISCUSSION

We review the district court's findings of fact for clear error and its legal conclusions de novo.  Reich v. Avoca Motel Corp., 82 F.3d 238, 240 (8th Cir. 1996).  The Fifth Amendment, as applied to the states through the Fourteenth Amendment, provides that "private property [shall not] be taken for public use, without just compensation."  U.S. Const. amends. V & XIV.  This guarantee prevents the government from forcing a few people to bear economic burdens that should be borne by the public as a whole.  Penn Central Transp. Co. v. City of New York, 438 U.S. 104, 122 (1978).  The takings clause reaches both direct appropriations of property and some regulations that redefine a property owner's range of interests in property.  Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1014 (1992).  Although property can be regulated, a

---

[6]That section provides for compensation for billboards removed near primary highways, which would include two of Outdoor's billboards.  The section applies only to billboards in compliance with all "applicable state or local laws, regulations and ordinances, including but not limited to zoning."  Iowa Code § 306C.13(8)(f).

regulation of land that "goes too far" is recognized as a taking. Id. at 1015.

### A. Per Se Taking

Two categories of regulatory takings do not require case-specific inquiry into the public interest advanced in support of the restraint. Id. The first category of these "per se takings" includes regulations that involve a physical invasion of the property. Id. The second category is where the regulation denies a property owner all economically beneficial and productive use of the land. Id.

Outdoor asserts that the City has deprived it of all economically beneficial use of its land and that the billboard regulation thus effects a per se taking. However, even where the state enacts a regulation that deprives land of all economically beneficial use, it has no duty to compensate "if . . . the proscribed use interests were not part of [the owner's] title to begin with." Id. at 1027. Such regulatory action may well have the effect of eliminating the land's only productive use, but it does not proscribe a productive use that was previously permissible. Id. Essentially, this means that the use of that property in what are now expressly prohibited ways was always unlawful. Id. at 1030. The takings clause does not require compensation when an owner is barred from putting land to a use that is proscribed by "existing rules or understandings that stem from an independent source such as state law." Id.

In other words, even if a regulation denies a landowner all economically productive use of the land, there is no compensable taking unless the landowner's "bundle of rights" previously included the right to engage in the restricted activity. This inquiry considers the reasonable investment-backed expectations of the landowner at the time of his acquisition of, or capital

-5-

expenditure on, the property in question. Any later limitation of use by the government which could have been effected prior to the reasonable investment-backed acquisition, cannot give rise to a takings claim. Id. at 1029-30.

As noted, Outdoor purchased property subject to a nonconforming use. A nonconforming use is one that lawfully existed prior to the effective date of a zoning restriction and that is allowed to continue to exist in nonconformity with the restriction. 8A Eugene McQuillin, Municipal Corporations § 25.180 (3d ed. 1994). The burden of proof in establishing a nonconforming use is on the party asserting it. Id. To establish a nonconforming use, a landowner must show that a lawful use existed before and at the time of the zoning change. Id. The goal of zoning policy is to minimize and eventually eliminate nonconforming uses. Incorporated City of Denison v. Clabaugh, 306 N.W.2d 748, 754 (Iowa 1981). Thus, reasonable amortization periods can be used to gradually eliminate nonconforming uses. McQuillin, § 25.190. See also supra at 3 n.5 & infra at 7-8 & 8 n.7.

Here, Outdoor has not shown that the billboards pre-date the ordinance that restricted the types of structures allowed in a residential zone. It purchased the business for a bargain price and never renewed the certificates of nonconforming use. It bought the business with the knowledge that the billboards were nonconforming uses and that the parcels of land were irregularly shaped and were not of much commercial value absent the billboards. Outdoor has enjoyed the benefit of monopoly status during the amortization period and during the pendency of this action. It knowingly purchased property that had been subject to a nonconforming use for a prolonged period--at least thirty-seven years with a predicted life of fifteen more years.

We need not decide whether the regulation at issue completely destroyed the economic value of Outdoor's property, for we find

that even if it did, the City need not compensate Outdoor, under a per se takings theory, since the right to erect a billboard did not inure in Outdoor's title.  Under these circumstances, we find no compensable taking.  See, e.g., Avenal v. United States, 100 F.3d 933, 937 (Fed. Cir. 1996) (claimant who, with an awareness of proposed regulatory change, takes advantage of opportunities afforded by government action, cannot have reasonable investment-backed expectations that they would be protected from planned government action); Hoeck v. City of Portland, 57 F.3d 781, 788-89 (9th Cir. 1995) (demolition did not amount to taking since, under zoning law in effect at time landowner took title, he had no right to use his property to maintain an abandoned structure), cert. denied, 116 S. Ct. 910 (1996).

## B.  Ordinary Taking

An owner whose deprivation is less than complete, and thus does not amount to a per se taking, may nevertheless be entitled to compensation in some circumstances.  Lucas, 505 U.S. at 1019 n.8. Diminution of property value alone does not establish a taking. See, e.g., Penn Central, 438 U.S. at 131; Scott v. City of Sioux City, Iowa, 736 F.2d 1207, 1217 (8th Cir. 1984).  There is generally no set formula to determine when such compensation is necessary.  Penn Central, 438 U.S. at 124.  Whether a particular restriction amounts to a taking depends on the circumstances of each case.  Id.  The inquiry is essentially an ad hoc, factual inquiry that considers:  (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct, investment-backed expectations; and (3) the character of the government regulation.  Id.; Armour & Co. v. Inver Grove Heights, 2 F.3d 276, 278 (8th Cir. 1993).

Assessing the economic injury to a billboard owner and the extent to which the regulation has interfered with his investment-backed expectations involves weighing such factors as whether the

-7-

land has any other economic use, the depreciation and life expectancy of the billboards, the income from the billboards during the amortization or grace period, the salvage value of the billboards and whether any amortization period is reasonable.[7] Naegele, 844 F.2d at 178. Outdoor's reasonable investment-backed expectations have been satisfied.

It has long been recognized that reasonable zoning ordinances are generally a lawful exercise of a state's police power to regulate in the interest of public health, comfort, safety, convenience and maintenance of property values. Board of Supervisors of Cerro Gordo County v. Miller, 170 N.W.2d 358, 360 (Iowa 1969). A city may justifiably prohibit all off-premises billboards for aesthetic or safety reasons, subject to First Amendment guidelines. Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 512 (1981). Community aesthetics and preservation of the character of a neighborhood are valid bases for a regulation. Georgia Outdoor Advertising, Inc. v. City of Waynesville, 900 F.2d 783, 785 (4th Cir. 1990) (aesthetics); Cerro Gordo, 170 N.W.2d at 361 (character of neighborhood).

Balancing these factors, we find that the ordinance at issue does not amount to a taking of constitutional magnitude. Outdoor has had the benefit of a five-year amortization period, during which it has enjoyed monopoly status. Additionally, Outdoor bought

---

[7]To determine the reasonableness of an amortization period, we balance public good against private loss. Board of Supervisors of Cerro Gordo County v. Miller, 170 N.W.2d 358, 362 (Iowa 1969). The elimination of existing uses within a reasonable time does not amount to a taking of property nor does it necessarily restrict the use of property so that it cannot be used for any purpose. Id. at 363. As a method of eliminating existing nonconforming uses, amortization affords owners the opportunity to make plans to offset some losses they might suffer and spreads the loss out over a period of years. Id. Thus, if the amortization period is reasonable, then the loss is small when compared to the benefit to the public. Id.

the billboards at a bargain price and has made a considerable profit from them.  Although Outdoor's expert witness testified that the billboards have a useful life of fifteen more years, the district court noted that they were built more than thirty-seven years ago and that some are in disrepair.  The ordinance at issue allows Outdoor to erect billboards in commercial districts that include a substantial portion of the City and that include well-traveled locations.    Under   the  circumstances,  we  find  no unconstitutional taking.  These findings apply with equal force to Outdoor's claims under the Iowa Constitution and under Iowa Code § 306.  Since the billboards are not a legal use under prior and current zoning regulations, the Iowa statute does not protect them.

## III.  CONCLUSION

For the reasons stated above, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.