ADAMS OUTDOOR ADVERTISING v
CITY OF EAST LANSING (AFTER REMAND)

Docket No. 113674. Argued April 5, 2000 (Calendar No. 6). Decided
July 26, 2000. Rehearing denied *post*, 1210.

Adams Outdoor Advertising brought an action in the Ingham Circuit
Court against the city of East Lansing, seeking declaratory and
injunctive relief from enforcement of the city's sign ordinance. The
court, Thomas L. Brown, J., granted partial summary disposition
for the plaintiff, finding that the sign ordinance was enacted with-
out legislative authority. The Court of Appeals, HOOD, P.J., and
MAHER and CYNAR, JJ., affirmed in an unpublished opinion per
curiam (Docket No. 110816). The Supreme Court reversed the deci-
sion of the Court of Appeals, finding that the city had the authority
to enact its sign code, and remanded the case to the trial court to
resolve whether enforcement of the sign code resulted in a taking
without just compensation. 439 Mich 209 (1992). On remand, the
circuit court ruled that, with regard to the plaintiff's rooftop lease-
holds, enforcement of the sign code resulted in a taking without
just compensation, depriving the plaintiff of all economically viable
use of that property. The Court of Appeals, SAWYER, P.J., and
MICHAEL J. KELLY and SMOLENSKI, JJ., affirmed. 232 Mich App 587
(1998) (Docket No. 200655). The city appeals.

In an opinion by Justice TAYLOR, joined by Justices CORRIGAN,
YOUNG, and MARKMAN, the Supreme Court *held*:

Adams' leasehold interests did not include the right to display
signs on rooftops after May 1, 1987. Accordingly, the sign code did
not effect a taking of Adams' interests in its rooftop signs.

1. The sign code is a legitimate exercise of East Lansing's police
power. Land use regulations effect a taking in two general situa-
tions: when they do not substantially advance a legitimate state
interest and when they deny an owner economically viable use of
land. Denial of an owner of economically viable use of land
includes a categorical taking, where the owner is deprived of all
economically beneficial or productive use of land, and a taking rec-
ognized on the basis of the application of the traditional "balancing
test" established in *Penn Central Transportation Co v New York
City*, 438 US 104 (1978). In applying the balancing test, a reviewing

court must engage in an ad hoc, factual inquiry, centering on the character of the government's action, the economic effect of the regulation on the property, and the extent by which the regulation has interfered with distinct, investment-backed expectations.

2. A lessor can transfer no greater rights than he possesses. Because, in this case the lessors never had an absolute right to display signs on the rooftops of their buildings, they had no right to prevent the imposition of regulations that represented reasonable exercises of the police power and that did not effect a taking. Thus, they could not convey to Adams an absolute right to display signs on the leased rooftops because they never possessed such a right. Accordingly, even before enactment of the sign code, the leases at issue did not include an absolute right to display signs on the rooftops. At most, they included a right to display signs on the rooftops subject to reasonable police power regulations that did not effect a taking of the lessors' interests.

3. Because the sign code does not deprive the lessors of all economically beneficial or productive use of land, it would not effect a categorical taking of the lessors' interests. Nor would it effect a taking under the three-part balancing test, i.e., it is a reasonable police power regulation, any economic effect would be limited because the rooftop is only a small portion of the lessors' property, and any interference would be limited because the rooftop is only a small portion of the lessors' property and because they never had an absolute right to display signs on the rooftop.

4. Adams was aware of the 1975 sign code and could have had no reasonable expectation that it could maintain the signs at the rooftop locations after the date designated in the code.

Justice KELLY, joined by Justice CAVANAGH, concurring, stated that the sign ordinance proscribing all rooftop billboards within the city limits does not result in a taking of the plaintiff's rooftop billboards. There has been no taking per se of the plaintiff's property, because the ordinance does not authorize the city to take title to or physically occupy the plaintiff's property. There has been no regulatory taking, because the plaintiff retains an economically beneficial use of its billboards. It had no protected right to continue to use its leaseholds to display rooftop billboards when those leases were entered into after the effective date of the ordinance. The majority's analysis is premised on the rights of the lessor who is not before the Court and whose rights were not litigated.

The United States and the Michigan Constitutions require a governmental entity to pay just compensation for any private property it takes for public use. Those prohibitions can be implicated by governmental regulation that overburdens private property, and

can result in a taking where the regulation does not substantially advance a legitimate state interest, or where it denies an owner economically viable use of his land.

The ordinance in this case bears on two property interests of the plaintiff: in its billboards and in the leaseholds on which its billboards are located. The interest in the billboards is an interest in personal property. The fact that they are affixed to rooftops of buildings does not bring them within the denomination of real estate. Rather, they are trade fixtures. The leases, however, are interests in real property.

The sign ordinance does not result in a regulatory taking. Where a proscribed use was not part of a property owner's title to begin with, there can be no taking of the property when the proscription is enforced. The plaintiff entered into the leases at issue after the effective date of defendant's sign ordinance with full knowledge that the ordinance prohibited billboards from being displayed on its rooftop location after May 1, 1987. The plaintiff never had the right, among its leasehold "bundle of rights," to display the rooftop billboards after that date. Nor can it be said that the plaintiff had an expectation that it could continue to renew its leases while defendant's ordinance was in effect. Under the circumstances presented, the plaintiff had no realistic expectancy that the leases it entered into after the effective date of defendant's ordinance would last their full term or be renewable.

Because the plaintiff entered into lease agreements with full knowledge that at anytime the city could enforce its sign code and render the leaseholds useless, it had no legitimate or reasonable investment-backed expectation in them. When the substantial economic effect on the plaintiff is balanced against the absence of any investment-backed expectation and the recognized social benefit of improving safety and aesthetics, the sign ordinance did not result in a taking of the plaintiff's leaseholds. Accordingly, no compensation is due the plaintiff for the regulatory effect of the sign ordinance on its leasehold interests.

Chief Justice WEAVER, concurring in the result, stated that the Supreme Court has failed to give due consideration to the private property interests related to billboard ownership and leases.

The rooftop billboards preexisted the 1975 ordinance and became nonconforming uses after the ordinance's enactment. A prior nonconforming use is a vested right in the use of particular property that does not conform to zoning restrictions, but is protected because it lawfully existed before the zoning regulation's effective date. Even if an ordinance is reasonable, it cannot operate to oust a property owner from a vested right.

*Wolverine Sign Works v Bloomfield Hills*, 279 Mich 205 (1937), recognized that billboard regulation could run afoul of the prohibition against taking private property without just compensation.

*Adams Outdoor Advertising v East Lansing*, 439 Mich 209 (1992), held that the City of East Lansing had the power to forcibly terminate nonconforming billboards and signs over a reasonable period of time. The implication of the reasonable period of time proviso of the holding is that, on its face, the ordinance effected a taking. While the Court remanded to consider the compensating effect of amortization, the effect of amortization would not change the nature of the underlying governmental action.

Reversed and remanded.

*Fraser, Trebilcock, Davis & Foster, P.C.* (by *Michael H. Perry*), for the plaintiff-appellee.

*McGinty, Jakubiak, Frankland & Hitch, P.C.* (by *Thomas M. Hitch* and *Dennis E. McGinty*), for the defendant-appellant.

Amici Curiae:

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *A. Michael Leffler*, Assistant Attorney General in Charge, and *S. Peter Manning*, Assistant Attorney General, for the Attorney General.

*Bodman, Longley & Dahling, L.L.P.* (by *James J. Walsh*), for Michigan Chamber of Commerce and Outdoor Advertising Association of Michigan.

*Secrest, Wardle, Lynch, Hampton, Truex & Morley* (by *Gerald A. Fisher* and *Thomas R. Schultz*) for Michigan Municipal League.

*McClelland & Anderson, L.L.P.* (by *Gregory L. McClelland, Kelly A. Myers*, and *Marc D. Matlock*), for Small Business Association of Michigan.

*Plunkett & Cooney, P.C.* (by *Mary Massaron Ross*), for American Planning Association.

*John F. Rohe* (*John T. Bagg* and *John D. Echeverria,* of counsel), for Scenic America and Scenic Michigan.

(AFTER REMAND)

TAYLOR, J. At issue is whether application of East Lansing's sign code to Adams Outdoor Advertising's rooftop signs effects a taking. The trial court and Court of Appeals concluded that the code resulted in a taking with respect to Adams' rooftop signs. We reverse.

In 1975, East Lansing adopted its current sign code. As pertinent to this appeal, the code prohibited rooftop signs. Subsection 8.38(12). The code's amortization provision required removal of nonconforming signs by May 1, 1987. Subsection 8.39(8).

Adams acquired Central Advertising in 1983. It renewed the leases associated with the off-premises rooftop signs at issue several times after the enactment of the 1975 sign code, most recently in 1993 and 1996.

Adams and other entities (who had nonconforming on-premises signs) sued East Lansing for relief from denial of their requests for variances from the sign code. The trial court granted plaintiffs' motion for summary disposition on the basis that East Lansing lacked statutory authority for the code's amortization provision. The Court of Appeals affirmed. Unpublished opinion per curiam, issued April 20, 1990 (Docket No. 110816). This Court reversed, holding that East Lansing has authority under the home rule

act to regulate signs, including eliminating nonconforming signs through the use of an amortization provision. 439 Mich 209, 219; 483 NW2d 38 (1992) *(Adams I)*. We remanded this matter to the trial court to determine whether application of the code to the signs at issue effected a taking.

On remand, the trial court concluded that application of the sign code to Adams' rooftop signs and to certain of its freestanding signs effected a taking.[1] The Court of Appeals affirmed regarding the rooftop signs, but reversed and remanded regarding the freestanding signs. 232 Mich App 587; 591 NW2d 404 (1998). This appeal relates only to the application of the sign code to the rooftop signs.

In *Adams I*, this Court concluded:

> We are simply holding that the amortization provision of the East Lansing sign code is a police power ordinance, properly enacted under MCL 117.4i(5); MSA 5.2082(5), that enables cities the authority to regulate signs and billboards in the interest of the health, safety, and welfare of the community and to promote the aesthetic value of the city. [439 Mich 218, n 14.]

It is therefore established that the code is a legitimate exercise of East Lansing's police power. The only question is whether this regulation goes so far as to result in a taking.[2]

---

[1] East Lansing entered into a consent judgment with the other plaintiffs; accordingly, Adams was the only remaining plaintiff on remand.

[2] We point out that there is no issue regarding nonconforming use because nonconforming use analysis only applies in the context of zoning regulations. *Adams I* held that the sign code is not a zoning regulation, but a police power regulation in the interest of public health and safety. Accordingly, nonconforming use analysis is inapposite here. To understand this distinction (that nonconforming use analysis applies only to

US Const, Am V and Const 1963, art 10, § 2 prohibit the taking of private property for public use without just compensation. Drawing on United States Supreme Court precedent, this Court recently reiterated the appropriate analyses for determining whether a taking has occurred in *K & K Construction, Inc v Dep't of Natural Resources*, 456 Mich 570; 575 NW2d 531 (1998). The *K & K* Court noted that land use regulations effect a taking in two general situations: when they do not substantially advance a legitimate state interest or when they deny an owner "economically viable use of his land." *Id.* at 576. It then differentiated the second type of taking further at 576-577:

> The second type of taking, where the regulation denies an owner of economically viable use of land, is further subdivided into two situations: (a) a "categorical" taking, where the owner is deprived of "all economically beneficial or productive use of land," *Lucas v South Carolina Coastal Council*, 505 US 1003, 1015; 112 S Ct 2886; 120 L Ed 2d 798 (1992); or (b) a taking recognized on the basis of the application of the traditional "balancing test" established in *Penn Central Transportation Co v New York City*, 438 US 104; 98 S Ct 2646; 57 L Ed 2d 631 (1978).

It defined categorical takings at 577:

---

zoning regulations and not to public health and safety regulations), one need only consider the unprecedented handcuffing of the government that would ensue if public health and safety regulations were subject to nonconforming use analysis. This would leave governments powerless to immediately terminate existing hazardous or dangerous activities because any preexisting facility engaged in these activities would be able to claim nonconforming use status and continue indefinitely in spite of the regulation.

In the former situation, the categorical taking, a review-
ing court need not apply a case-specific analysis, and the
owner should automatically recover for a taking of his
property. *Lucas, supra* at 1015. A person may recover for
this type of taking in the case of a physical invasion of his
property by the government (not at issue in this case), or
where a regulation forces an owner to "sacrifice *all* eco-
nomically beneficial uses [of his land] in the name of the
common good . . . ." *Id.* at 1019 (emphasis in original).

Next, it explained the balancing test analysis at 577:

In the latter situation, the balancing test, a reviewing
court must engage in an "ad hoc, factual inquir[y]," center-
ing on three factors: (1) the character of the government's
action, (2) the economic effect of the regulation on the
property, and (3) the extent by which the regulation has
interfered with distinct, investment-backed expectations.
*Penn Central,* 438 US 124.

However, before we apply these tests, there is a
preliminary question: does the claimant possess the
interest that he alleges is being taken by the regula-
tion? Here, the Court of Appeals clarified that Adams'
theory at trial was that the sign code effected a taking
of its real property interests in the rooftop leaseholds.
232 Mich App 596. As a lessee, Adams' property inter-
est rights are limited to the rights possessed by the
lessors, i.e., the owners of the buildings who leased
the two rooftop sites at issue to Adams.[3] It is funda-
mental property law that a lessor can transfer no
greater rights than he possesses. See, e.g., *McMillan v
Mich S & N I R R Co,* 16 Mich 79 (1867). Here, the

---

[3] We analyze the interests of the lessors (who are not parties to this
matter) solely to determine the interests of Adams, the lessee and plain-
tiff-appellee in this matter.

lessors never had an *absolute* right to display signs on the rooftops of their buildings. They had no right to prevent the imposition of regulations that represented reasonable exercises of the police power and that did not effect a taking.[4] Thus, they could not convey to Adams an absolute right to display signs on the leased rooftops because they never possessed such a right in the first place. Accordingly, even before enactment of the sign code, the leases at issue did not include an absolute right to display signs on the rooftops. At most, the leases included a right to display signs on the rooftops subject to reasonable police power regulations that did not effect a taking of the lessors' interests.

A property owner cannot determine the efficacy of a regulation by the manner in which he structures leases of his property. For example, a property owner, with respect to whom a particular regulation would not constitute a taking, cannot transform such regulation into a taking simply by transferring a narrow parcel or interest in his property to a lessee.[5] Under the constitution, we do not believe that a property owner, confronted with an imminent property regulation, can nullify such a legitimate exercise of the police power by leasing narrow parcels or interests in his property so that the regulation could be characterized as a taking only because of its disproportionate effect on the narrow parcel or interest leased.

---

[4] Note that in order to demonstrate a taking with respect to the lessors, the relevant parcel for analysis would be the lessors' entire property interest, i.e., the building and grounds, not just the portion of the rooftop that was leased to Adams.

[5] We do not address here the situation in which a property owner transfers an ownership interest, as opposed to a lease interest, in property.

Here, East Lansing enacted a sign code in 1975. As noted above, this Court has previously concluded that the code represents a valid exercise of East Lansing's police power. 439 Mich 218, n 14. The code's provision prohibiting rooftop signs only removes one "stick" from the lessors' total "bundle" of rights in their property because the vast majority of the lessors' property is unaffected by this provision. Because this provision does not deprive the lessors of "all economically beneficial or productive use of land," it would not effect a categorical taking of the lessors' interests. Nor would it effect a taking under the three-part balancing test. Regarding factor 1 (the character of the government's action), this Court has concluded that the code is a reasonable police power regulation. Regarding factor 2 (the economic effect of the regulation on the property), any economic effect would be limited because the rooftop is only a small portion of the lessors' property. Regarding factor 3 (interference with investment-backed expectations), any interference would be limited because the rooftop is only a small portion of the lessors' property and because they never had an *absolute* right to display signs on the rooftop. For these reasons, the provision of the code prohibiting rooftop signs would not effect a taking of the lessors' interests under either the categorical test or the balancing test.[6] Thus, the lessors would have had no right to display a sign on their roof after the May 1, 1987, date designated in the code and would have had no valid claim that the code effected a taking. Adams can possess no greater

---

[6] During oral argument, Adams conceded that the lessors may not have a taking claim.

rights under the lease than the lessors possessed. Accordingly, Adams has no right to display signs in contravention of the code and has no valid claim that the code effected a taking of its interest in the rooftop leases.

Further, Adams acquired the rooftop signs and leases at issue in 1983 and renewed the leases as recently as 1993 and 1996. In 1983, 1993, and 1996, Adams was aware of the 1975 sign code[7] and could have had no reasonable expectation that it could maintain the signs at the rooftop locations after the date designated in the code. Under these circumstances, Adams' property interests in the leases clearly did not include a right to display signs on a rooftop after May 1, 1987.[8]

For these reasons, we conclude that Adams' leasehold interests did not include the right to display signs on rooftops after May 1, 1987. Accordingly, the sign code did not effect a taking of Adams' interests in its rooftop signs. We reverse the Court of Appeals decision, which concluded otherwise. We instruct the trial court to conduct its proceedings regarding Adams' freestanding signs in accordance with this opinion.

---

[7] People are presumed to know the law. *Mudge v Macomb Co*, 458 Mich 87, 109, n 22; 580 NW2d 845 (1998). Moreover, Adams received personal notice in the form of February 1987 notices from East Lansing instructing Adams to remove its nonconforming rooftop signs by May 1, 1987, as required by the sign code.

[8] Moreover, to the extent that Adams might be interpreted as making a taking claim with respect to its personal property interests in the signs, such a claim fails. The code forbids displaying signs on rooftops, but it does not confiscate Adams' existing signs or appropriate them for public use. They are still available for use in other locations. Thus, application of the code to the rooftop signs obviously does not effect a taking of the signs themselves.

Corrigan, Young, and Markman, JJ., concurred with Taylor, J.

Kelly, J. (*concurring*). In this taking case, defendant, the city of East Lansing, appeals from a Court of Appeals decision affirming the trial court in part and reversing it in part in favor of plaintiff, Adams Outdoor Advertising. The issue is whether defendant's sign ordinance resulted in a regulatory taking of plaintiff's billboards and rooftop leaseholds.

I would reverse the Court of Appeals decision insofar as it holds that defendant's sign ordinance resulted in a taking and reverse the trial court order granting compensation to plaintiff. I write separately because I disagree with the majority's analysis. It is premised on the rights of the lessor who is not before the Court and whose rights were not litigated.

BACKGROUND

This dispute concerns rooftop billboards at two different locations in East Lansing. Plaintiff owns the billboards and leases the rooftop locations where they are installed. The billboards were erected in 1968 and 1955, respectively. The leases at issue in this dispute were entered into in 1996 and 1993.

In 1975, defendant enacted a new ordinance to regulate signs and billboards throughout the city. The ordinance made plaintiff's rooftop billboards nonconforming and prohibited plaintiff from displaying them after May 1, 1987.[1]

---

[1] The ordinance stated at § 8.39:

In 1987, defendant advised plaintiff that it would enforce its sign ordinance. After exhausting its appeals with defendant, plaintiff initiated this action seeking declaratory and injunctive relief. The trial court granted plaintiff's motion for partial summary disposition, finding that the sign ordinance was enacted without legislative authority. Defendant appealed, and the Court of Appeals affirmed.

This Court reversed the decision of the Court of Appeals, finding that the city had the authority to enact its sign code. The Court remanded the case to the trial court to resolve the issue whether enforcement of the sign code resulted in a taking without just compensation. 439 Mich 209; 483 NW2d 38 (1992).

On remand, the circuit court ruled that, with regard to the rooftop leaseholds, enforcement of the sign code resulted in a taking without just compensation. It reasoned that plaintiff was deprived of all economically viable use of that property. The Court of Appeals affirmed. 232 Mich App 587; 591 NW2d 404 (1998).[2]

----

Any existing sign on the effective date of this Chapter or any amendment hereto, which does not at that time comply with all of the provisions here, including any amendment

*    *    *

Shall not be placed, maintained, or displayed by any person on or after May 1, 1987.

[2] Several freestanding billboards owned by plaintiff and located on land owned by plaintiff had also been the subject of the litigation up to this point. The trial court found that defendant's ordinance resulted in a taking of the freestanding billboards, as well. The Court of Appeals reversed the trial court's decision with regard to the freestanding billboards. It found that all economic use of the property was not foreclosed, because defendant's ordinance did not prohibit plaintiff from displaying all its billboards at that location. There is no issue before this Court regarding the freestanding billboards. We proceed to consider defendant's appeal from the

ANALYSIS

I

The issue is whether a regulatory taking has occurred that requires defendant to compensate plaintiff when defendant's sign ordinance prohibits plaintiff from using its existing rooftop billboards. The federal constitution and the Michigan Constitution require a governmental entity to pay just compensation for any private property it takes for public use. US Const, Am V;[3] Const 1963, art 10, § 2.[4]

Those constitutional prohibitions against taking private property without just compensation can be implicated by governmental regulation that overburdens private property. We have held that such regulation can result in a taking in two general situations:

> (1) where the regulation does not substantially advance a legitimate state interest, or (2) where the regulation denies an owner economically viable use of his land. *Keystone Bituminous Coal Ass'n v DeBenedictis*, 480 US 470, 485; 107 S Ct 1232; 94 L Ed 2d 472 (1987).
>
> The second type of taking, where the regulation denies an owner of economically viable use of land, is further subdivided into two situations: (a) a "categorical" taking, where

---

Court of Appeals finding that defendant's ordinance resulted in a taking of plaintiff's rooftop billboards.

[3] The Fifth Amendment to the United States Constitution provides: "nor shall private property be taken for public use without just compensation." The Fifth Amendment is applicable to the states through the Fourteenth Amendment. *Penn Central Transportation Co v New York City*, 438 US 104, 122; 98 S Ct 2646; 57 L Ed 2d 631 (1978).

[4] Const 1963, art 10, § 2 provides:

Private property shall not be taken for public use without just compensation therefor being first made or secured in a manner prescribed by law. Compensation shall be determined in proceedings in a court of record.

the owner is deprived of "all economically beneficial or pro-
ductive use of land," *Lucas v South Carolina Coastal Coun-
cil*, 505 US 1003, 1015; 112 S Ct 2886; 120 L Ed 2d 798
(1992); or (b) a taking recognized on the basis of the appli-
cation of the traditional "balancing test" established in *Penn
Central Transportation Co v New York City*, 438 US 104; 98
S Ct 2646; 57 L Ed 2d 631 (1978).

In the former situation, the categorical taking, a review-
ing court need not apply a case-specific analysis, and the
owner should automatically recover for a taking of his
property. *Lucas, supra* at 1015. A person may recover for
this type of taking in the case of a physical invasion of his
property by the government . . . , or where a regulation
forces an owner to "sacrifice *all* economically beneficial
uses [of his land] in the name of the common good . . . ."
*Id.* at 1019 (emphasis in original). In the latter situation, the
balancing test, a reviewing court must engage in an "ad hoc,
factual inquir[y]," centering on three factors: (1) the charac-
ter of the government's action, (2) the economic effect of
the regulation on the property, and (3) the extent by which
the regulation has interfered with distinct, investment-
backed expectations. *Penn Central* [*supra* at] 124. [*K & K
Construction, Inc v Dep't of Natural Resources*, 456 Mich
570, 576-577; 575 NW2d 531 (1998).]

A

Before determining whether a compensable taking
has occurred, we must first classify the property
rights under consideration. The Court of Appeals
found them to constitute real property. It stated:

[A] review of the record makes it abundantly clear that
this case was tried on the theory that the property interests
claimed to have been taken by East Lansing's sign code are
Adams' real property interests, whether leasehold or fee
simple, in the places where its billboards are located. East
Lansing's argument that no taking occurred because the
billboards are personal property misapprehends the nature

of the property interests claimed to have been taken in this case and is therefore rejected. [232 Mich App 596.]

Plaintiff asserts that defendant's sign ordinance results in a taking of its billboards and also interferes with its leaseholds on which its billboards are attached. Defendant continues to argue that its sign ordinance is directed solely toward plaintiff's personal property, its billboards. Defendant points out that, unlike the city's action in *In re Acquisition of Billboard Leases & Easements*[5] where the city condemned leaseholds on which billboards were located, its ordinance does not condemn any real property. It regulates only the placement of billboards.

I find that defendant's ordinance comes to bear on two different property interests of plaintiff: plaintiff's property interest in its billboards and also plaintiff's property interest in the leaseholds on which its billboards are located.

I proceed without considering defendant's arguments regarding the proper "denominator parcel" to use. Those arguments were first raised in the Court of Appeals, so they are unpreserved for our review. *Booth Newspapers, Inc v Univ of Michigan Bd of Regents*, 444 Mich 211, 234; 507 NW2d 422 (1993). Furthermore, consideration of the issue is an inherently factual inquiry that falls within the province of the trial court. *K & K Construction, supra* at 580. Thus, I concentrate my focus on the specific billboards and leaseholds at issue.

---

[5] 205 Mich App 659; 517 NW2d 872 (1994).

Plaintiff's interest in its billboards is an interest in personal property. Personal property is broadly defined as

> everything that is the subject of ownership, not coming under denomination of real estate. A right or interest in things personal, or right or interest less than a freehold in realty, or any right or interest which one has in things movable. [Black's Law Dictionary (6th ed), p 1217; see also *City of Holland v Fillmore Twp*, 363 Mich 38, 42; 108 NW2d 840 (1961).]

The fact that plaintiff's billboards are affixed to the rooftops of the buildings on which they are located does not bring them within the "denomination of real estate." I agree with the recent Court of Appeals decision in *Outdoor Systems Advertising, Inc v Korth*,[6] holding that a lessee's billboards located on a rooftop are trade fixtures, and trade fixtures are the personal property of the lessee. Accordingly, I would hold that plaintiff's billboards are personal property.

2

Plaintiff's other property interest affected by defendant's sign ordinance is its rooftop leases. We have previously determined that leases are interests in real property. See *Fidelity Trust Co v Wayne Co*, 244 Mich 182; 221 NW 111 (1928).

Plaintiff leased the rooftops for the sole purpose of mounting its billboards upon them. Defendant's ordinance prohibits rooftop billboards. Thus, defendant's

---

[6] 238 Mich App 664, 667; 607 NW2d 729 (1999).

ordinance has rendered plaintiff's leases useless, adversely affecting plaintiff's real property interest in them.

B

Having defined the property rights,[7] I consider whether defendant's sign ordinance was a taking of plaintiff's personal property interest in its billboards or its real property interest in its leaseholds. First, we analyze plaintiff's personal property interest in its billboards.

Defendant's ordinance did not result in a regulatory taking of plaintiff's billboards. " 'The general

---

[7] This is an important issue over which both the majority and Chief Justice WEAVER in her concurrence stumble. The majority relies on an analysis of the property owner's rights to determine that no taking has occurred. The problem with it is that the property owner is not and has not been a party to this dispute.

Chief Justice WEAVER as well fails adequately to identify the property interests at issue. She refers to the plaintiff's billboards and leaseholds as nonconforming uses that became vested rights when they preexisted defendant's sign ordinance. However, she fails to recognize that the leases in effect at the time defendant's ordinance was enacted or became effective had long since expired when plaintiff initiated this suit. She also fails to recognize that the billboards at issue are the personal property of plaintiff. Her analysis of a vested nonconforming land use does not apply to them because plaintiff has no real property interest to which the billboards are attached.

Plaintiff is before the Court as a lessee. "A lease is a conveyance by the owner of an estate of a portion of the interest therein to another for a term less than his own for a valuable consideration." *De Bruyn Produce Co v Romero*, 202 Mich App 92, 98; 508 NW2d 150 (1993). Accordingly, plaintiff's real property interest is limited to the duration of its lease. A lessee does not stand in the shoes of or have rights identical to those of a real property owner that might be entitled to continue a nonconforming use indefinitely. Thus, the questions relevant to this case are whether plaintiff had a vested right to renew its nonconforming leasehold interests. Also, did defendant's ordinance result in a taking of plaintiff's personal property, the billboards, or plaintiff's real property interest, its leaseholds. Those are the issues properly before the Court and which I consider in resolving this case.

rule . . . is, that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking.' " *K & K Construction, supra* at 576, quoting *Pennsylvania Coal Co v Mahon,* 260 US 393, 415; 43 S Ct 158; 67 L Ed 322 (1922). That same principle applies to the regulation of personal property. See *Andrus v Allard,* 444 US 51; 100 S Ct 318; 62 L Ed 2d 210 (1979).

I see no need to perform an extended analysis of whether a regulatory taking sufficient to require compensation has occurred. Defendant's ordinance prohibits plaintiff from displaying its billboards from only two rooftop locations. As such, it affects merely one "strand" of plaintiff's "bundle" of rights in its billboards. Plaintiff is free to move the billboards elsewhere and continue to use them for its economic benefit. Significantly, plaintiff remains free to possess and transfer its billboards. See *Andrus, supra* at 66.

The fact that a substantial effort may be involved in removing and relocating the billboards does not result in a taking. See *Outdoor Systems Advertising, supra* at 671-672, citing *Wentworth v Process Installations, Inc,* 122 Mich App 452, 465; 333 NW2d 78 (1983).[8] Therefore, I would hold that defendant's sign ordi-

---

[8] As demonstrated above, plaintiff's billboards are trade fixtures. The Supreme Court in *Cameron v Oakland Co Gas & Oil Co,* 277 Mich 442, 459-460; 269 NW 227 (1936), stated:

Indeed, it is difficult to conceive that any fixture, however solid, permanent, and closely attached to the realty, placed there for the sole purpose of trade, may not be removed at the end of the term.

Thus, plaintiff's billboards remain personal property that plaintiff can remove. Defendant's ordinance does not take the billboards merely because it prohibits plaintiff from using them where they are currently located.

nance does not go so far as to result in a taking of plaintiff's billboards.

C

1

Neither does defendant's sign ordinance result in a regulatory taking of plaintiff's leaseholds. "[E]ven if a regulation denies a landowner all economically productive use of the land, there is no compensable taking unless the landowner's 'bundle of rights' previously included the right to engage in the restricted activity." *Outdoor Graphics, Inc v City of Burlington*, 103 F3d 690, 694 (CA 8, 1996). Thus, where the proscribed use was not part of a property owner's title to begin with, there can be no taking of the property when the proscription is enforced. *Lucas, supra* at 1027.

In *Outdoor Graphics*, the defendant's sign ordinance prohibited billboards in residential areas. *Id.* at 692. The plaintiff's billboards were erected before the sign ordinance was enacted but, at the time the plaintiff purchased them, they already constituted nonconforming uses under the defendant's zoning code. *Id.* Thus, when the defendant required the plaintiff to remove them, compensation was not due because the plaintiff had never included in its "bundle of rights" the right to display the billboards. *Id.* at 694. The use of the billboards was illegal when the plaintiff purchased them. *Id.*

Here, plaintiff entered into the leases at issue after the effective date of defendant's sign ordinance. Upon entering into these leases, plaintiff had full knowledge that the ordinance prohibited billboards from being displayed on its rooftop location after May 1, 1987.

Plaintiff never had the right, among its leasehold "bundle of rights," to display the rooftop billboards after that date. Thus, defendant's sign ordinance takes something that plaintiff never had. In such a situation, there is no categorical taking. See *Outdoor Graphics, supra* at 694. See also *Loveladies Harbor, Inc v United States*, 28 F3d 1171, 1177 (CA Fed, 1994).[9]

Plaintiff argues, however, that the Court must consider its expectation that it would renew its leases. In certain instances, the expectation of future lease renewals is considered in a taking analysis. See *Almota Farmers Elevator & Warehouse Co v United States*, 409 US 470; 93 S Ct 791; 35 L Ed 2d 1 (1973).

Here, however, plaintiff entered into its current leases for the rooftops *after* defendant's sign ordinance had gone into effect. That fact distinguishes this case from *Almota*, where the government sought to condemn a leasehold interest that had arisen before condemnation proceedings began and ran for another 7½ years. See *Almota, supra* at 471.

It cannot be said that plaintiff had an expectation that it could continue to renew its leases while defendant's ordinance was in effect. Under the circumstances presented, plaintiff had no realistic expectancy that the leases it entered into after the effective date of defendant's ordinance would last their full term or be renewable. Thus, I do not find that plain-

---

[9] The federal circuit court of appeals stated:

[T]he owner who bought with knowledge of the restraint could be said to have no reliance interest, or to have assumed the risk of any economic loss. In economic terms, it could be said that the market had already discounted for the restraint, so that purchaser could not show a loss in his investment attributable to it.

tiff's asserted expectancy of lease renewals is a protected legal right.[10]

2

Having found no categorical taking of plaintiff's leasehold interests, I next examine whether there was a compensable taking pursuant to the balancing test outlined in *Penn Central, supra.* That test requires me to consider 1) the economic effect of the regulation on plaintiff, 2) the extent to which that regulation has interfered with distinct, investment-backed expectations, and 3) the character of the government regulation. *Penn Central, supra* at 124.

There is no set formula for determining whether a taking has occurred under the balancing test. *K & K Construction, supra* at 588. However, I will first consider whether plaintiff had any distinct, investment-backed expectations in its leaseholds.

Here, plaintiff never had a legitimate expectation that its leaseholds or billboards would continue to produce income in perpetuity. The fact that plaintiff continued to invest in new leaseholds after defendant enacted its sign ordinance does not compel this Court to find a taking. Plaintiff was well aware that the enforcement of defendant's sign code could, at any time, render its leasehold interests worthless.[11]

---

[10] Accordingly, it is unnecessary to consider whether Michigan recognizes reasonable amortization periods as a method to preclude a taking.

[11] Plaintiff is presumed to have known the law. See *Mudge v Macomb Co*, 458 Mich 87, 109, n 22; 580 NW2d 845 (1998). Moreover, plaintiff received personal notice in the form of February 1987 notices from defendant instructing plaintiff to remove its nonconforming rooftop signs by May 1, 1987, as required by the sign ordinance.

Plaintiff argues that several Michigan cases gave it the expectation that, if challenged, defendant's sign ordinance would be struck down or defendant would be required to pay plaintiff just compensation. See *Central Advertising Co v Ann Arbor*, 391 Mich 533; 218 NW2d 27 (1974); *Wolverine Sign Works v Bloomfield Hills*, 279 Mich 205; 271 NW 823 (1937). The court in *Naegele Outdoor Advertising v City of Durham*[12] addressed this issue directly:

> "A person who purchases land with notice of statutory impediments to the right to develop that land can justify few, if any, legitimate investment-backed expectations of development rights which rise to the level of constitutionally protected property rights . . . the state cannot be the guarantor by inverse condemnation proceedings, of the investment risk which people choose to take in the face of statutory or regulatory impediments." *Claridge v New Hampshire Wetlands Bd*, 125 NH 745 [750]; 485 A2d 287, 291 (1984). . . . This is especially true in the case of . . . leases for sign locations. [*Id.* at 1079.]

I agree with the *Naegele* court that constitutional protections are not meant to insure risky investments. Here, plaintiff entered into lease agreements with full knowledge that at anytime defendant could enforce its sign code and render the leaseholds useless. Plaintiff had no legitimate or reasonable investment-backed expectation in them.

Turning to the character of the governmental regulation, defendant's ordinance constitutes an outright ban on rooftop billboard advertising. Courts, however, have recognized the social benefits that such bans promote. See *Outdoor Graphics, supra* at 695.

---

[12] 803 F Supp 1068 (MD NC, 1992).

The United States Supreme Court cited aesthetic or safety reasons to justify the prohibition of billboards. *Metromedia, Inc v San Diego*, 453 US 490, 512; 101 S Ct 2882; 69 L Ed 2d 800 (1981). Therefore, I find that the character of the governmental regulation "tilts the scales" even further toward a finding that no taking has occurred.

I realize that the economic effect on the plaintiff in this case is substantial because defendant's ordinance precludes plaintiff from using its leaseholds. I balance that fact against the absence of any investment-backed expectation and the recognized social benefit of improving safety and aesthetics. I conclude that defendant's sign ordinance did not result in a taking of plaintiff's leaseholds. Accordingly, no compensation is due plaintiff for the regulatory effect of defendant's sign ordinance on its leasehold interests.[13]

### CONCLUSION

I would hold that defendant's sign ordinance proscribing all rooftop billboards within defendant's city

---

[13] Chief Justice WEAVER, in her concurrence, states that *Wolverine Sign Works v Bloomfield Hills*, 279 Mich 205; 271 NW 823 (1937), "recognized that billboard regulation could run afoul of the prohibition against taking private property without just compensation." *Post* at 42. While I agree that there are certain instances where billboard regulation could result in a taking, *Wolverine* does not stand for that proposition.

The Court in *Wolverine* struck down a city ordinance that regulated billboard maintenance. *Id.* at 208. It did not, however, perform a taking analysis. *Id.* Instead, it relied on its finding that the city's ordinance vested a municipal officer with the power to *arbitrarily* limit the use of billboards through a permit process. *Id.* The Court expressly recognized that billboards may be prohibited pursuant to zoning regulations to promote the public health, safety and general welfare. *Id.* Thus, if relevant to this case at all, *Wolverine* supports my holding that no taking occurred. Defendant's sign ordinance did not vest any type of arbitrary authority in the city or in any of its employees.

limits does not result in a taking per se of plaintiff's rooftop billboards. There has been no per se taking of plaintiff's property, because defendant's ordinance does not authorize defendant to take title to or physically occupy plaintiff's property. There has been no regulatory taking, because plaintiff retains an economically beneficial use of its billboards. It had no protected right to continue to use its leaseholds to display rooftop billboards when those leases were entered into after the effective date of defendant's ordinance.

Defendant's sign ordinance did not result in a taking of plaintiff's rooftop billboards or leaseholds that requires just compensation. Accordingly, I would reverse the Court of Appeals decision to the contrary and would vacate the trial court order granting compensation to plaintiff for the taking of its rooftop billboards.

CAVANAGH, J., concurred with KELLY, J.

WEAVER, C.J. I concur in the result only of the majority opinion. I am concerned that this Court has failed to give due consideration to the private property interests related to billboard ownership and leases.

The rooftop billboards at issue were constructed in 1955 and 1968. They, and the leases for their use, preexisted the 1975 ordinance and became nonconforming after the ordinance's enactment. "A prior nonconforming use is a vested right in the use of particular property that does not conform to zoning restrictions, but is protected because it lawfully existed before the zoning regulation's effective date." *Heath Twp v Sall*, 442 Mich 434, 439; 502 NW2d 627

(1993). "Though the ordinance be reasonable, it cannot operate to oust the property owner of his vested right." *Dusdal v City of Warren*, 387 Mich 354, 359-360; 196 NW2d 778 (1972). Specifically, in *Wolverine Sign Works v Bloomfield Hills*, 279 Mich 205, 208; 271 NW 823 (1937), this Court held that while billboards were subject to reasonable regulation, a city may not destroy, by a billboard maintenance ordinance, the property right in a lease use. In other words, *Wolverine* recognized that billboard regulation could run afoul of the prohibition against taking private property without just compensation.

In *Adams Outdoor Advertising v East Lansing*, 439 Mich 209; 483 NW2d 38 (1992) *(Adams I)*, this Court held that the City of East Lansing had the power to "forcibly *terminate* nonconforming billboards and signs over a reasonable period of time." *Id.* at 212 (emphasis added). The implication of the "reasonable period of time" proviso of this holding is that, on its face, the ordinance effected a taking. The Court remanded to consider the compensating effect of amortization. However, the effect of amortization would not change the nature of the underlying governmental action.